## 11023

### BOARD OF COMMISSIONERS v. RICHARDSON *ET AL.*
### SAME v. GADSDEN

#### (114 S. E., 632)

1. EMINENT DOMAIN—TIME OF TAKING PROPERTY FIXES POINT AT WHICH DAMAGES SHALL BE ASSESSED.—Where the Board of County Commissioners, as soon as they had fixed by resolution the amount of compensation and damages to which the owner was .entitled, as provided by Civ. Code 1912, § 1933, went into possession of the condemned property, that determined when the taking occurred, and fixed the point at which damages should be assessed.

2. EMINENT DOMAIN—RULE FOR DETERMINING VALUE OF GROWING UNMATURED CROPS STATED.—Where growing unmatured crops on land condemned for County roads are destroyed at any period of their existence and at any stage of development, the rule is to ascertain what would reasonably have been produced but for the act of the condemnor and what would it have been worth on the market at. the time ·of such destruction, and then deduct the estimated expenses of producing, cultivating, harvesting, and marketing.

3. EMINENT DOMAIN—LANDLORD NOT ENTITLED TO COMPENSATION FOR DESTRUCTION OF CROPS OF TENANT.—The owner of land condemned for County roads is not entitled to compensation for damages to crops on the land which belonged to a tenant.

Before RICE, J. Fairfield. September, 1921. Reversed and remanded.

Separate condemnation proceedings by the Board of County Commissioners of Fairfield County against E. A. Richardson and F. M. Gadsden. The landowners appealed to the Circuit Court, where a judgment for increased damages was rendered in their. favor and the Commissioners appeal. Reversed and remanded.

*Mr. W. D. Douglas,* for appellants, cites: *Condemnation regulated:* 1 Civ. Code 1912, Sec. 1933; 28 ‑Stat., ·741–2. *Damages fixed at time of taking:* 10 R. C. L., Sec. 183. *Lien holder not entitled to claim proceeds of condemnation:* 10 R. C. L., 141, Sec. 123.

*Messrs. McDonald & McDonald,* for respondents, cite: *Measure of damages for taking growing crops:* 57 S. C.,

189; 140 A. L. R., 309. *Mortgagees had title to crops:* 112 S. C., 243; 3 Strob. L., 457; 2 Speer, 181.

October 9, 1922.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

The Board of County Commissioners of Fairfield County, in carrying out certain alterations and improvements in a public highway, instituted separate condemnation proceedings against Richardson and Gadsden. In the Richardson case they condemned the top-soil upon eight acres of land planted in cotton and a strip of land for a slight change of the highway. The hearing was had on July 28, 1921, and by resolution of the Board the compensation for both top-soil and strip of land was fixed at $109.

In the Gadsden case they condemned the top-soil upon four acres of land planted in cotton. The hearing was had on August 15, 1921, and by resolution of the Board the compensation was fixed at $129. Both landowners appealed to the Circuit Court, where the question of compensation was tried *de novo.*. Both cases, it appears, were tried together by Judge Rice and a jury. The verdict in the Richardson case was $275, and in the Gadsden case $300. The Commissioners have appealed, and the two appeals were heard together in this Court.

It appeared that the market price of cotton on July 28, 1921, the date of Richardson's condemnation, was 10 cents per pound, that on August 15, 1921, the date of the Gadsden condemnation, it was 12 cents, and that at the time of the trial of the cases in the Circuit Court it had risen to 21 cents. The County Commissioners contended that the market value at the time of the condemnation must be taken as the measure of damages for the cultivation of the unmatured crop of cotton, while the owners contended that the market value at the time of trial was the true criterion. The Circuit Judge held with the owners, and that is the main

issue in the two cases. A question arises in the Richardson case not common to the Gadsden case which will be considered later.

It is conceded that as soon as the Board of County Commissioners, by resolution as provided in Section 1933, Volume I, Code of Laws A. D. 1912, fixed the amount of compensation and damages to which the owner was entitled, they went into possession of the condemned property. That determined when the taking occurred, and fixed the point at which damages should be assessed. The value of the owner's property which was destroyed, "taken," as of that date is the measure of compensation and damages. The fact that an appeal lies to the Circuit Court and a trial *de novo* had upon that issue cannot change the period at which the estimate is to be made. That has already been fixed and cannot be changed by the accidental rise or fall in the market price of the property destroyed.

In the case of growing unmatured crops destroyed, at any period of their existence, at any stage of development, the criterion is to ascertain: (1) What would reasonably have been produced but for the act of the condemnor; (2) what would it have been worth on the market at the time of such destruction; (3) deduct therefrom the estimated expenses of producing, cultivation, harvesting and marketing.

This is the only rule, in the nature of things, that the Board of Commissioners could have applied, for they could not have speculated upon the future market price of the cotton. It would be illogical, upon an appeal from their decision, to open up the issue upon an entirely different basis of valuation.

The point peculiarly applicable to the Richardson case is that, as the crop was that of a tenant, the landlord is not entitled to compensation and damages. The Board of County Commissioners, having instituted the

proceedings of condemnation against the landlord, is not in a position to raise this question.

The judgment of this Court is that the judgment appealed from be reversed, and that the case be remanded to the Circuit Court for new trials.

CHIEF JUSTICE GARY and JUSTICE MARION concur.

MR. JUSTICE FRASER: I dissent. The owner is entitled to compensation and damages. He is entitled to what he lost by the taking. In July, when the land was actually taken, the amount of his loss could not have been ascertained with exactness. The rule of the best evidence allowed an estimate of the amount of cotton that would have been raised, and the expense of preparing the crop for market. The price when gathered was pure guess in July. In the fall, when the case was tried, the price was no longer a guess, but had become a certainty. The loss was the price the owner did not get in the fall when the cotton matured. The cotton itself was worth nothing in July. Cotton is not a forage crop, and its market value in July was nothing. There was no cotton, only the plant, in July, and the plant was of no value. It was therefore necessary to merely estimate what it would be in the fall. There was no other way to arrive at the amount of cotton destroyed. Having arrived at the amount of cotton destroyed, or rather the amount of cotton that would have been made by the best-known and available method, the question remained as to the price. There was no way to tell what the price would be in the fall, and the parties were shut up to the July price. The estimate of the amount of cotton to be made was transferred in estimate to the fall. Why not the price also if the fall price could have been estimated also. Let us suppose that the owner had sold his cotton for fall delivery at the price it actually reached in the fall. Then the taking prevented the owner from delivering at the fall price. No one could doubt that the contract price was the measure of his damages. In the case supposed, you fix the damages by the price

he would have received. I see no difference in principle in the case before us. It seems to me that if we are bound by a hard and fast rule to estimate the damages as of the time of the taking, then the owner cannot be allowed anything for his lost cotton, for no cotton was taken. I think the fall price when the cotton would have been ready for market, now a certainty, fixes the amount of his damages. For these reasons I dissent.