13488

HOWELL *ET AL.* v. STATE HIGHWAY DEPARTMENT

(166 S. E., 129)

Messrs. *John M. Daniel, Attorney General, Cordie Page* and *J. Ivey Humphrey, Assistant Attorneys General,* and *McDonald, Macaulay & McDonald,* for appellant, ■■■■

*Messrs. Hemphill & Hemphill,* for respondents, ■■■

October 11, 1932.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

South Carolina Highway Commission, after due notice, condemned certain land of the respondents for road purposes, on State route No. 9, in Chester County. The notice of intention to condemn was dated July 10, 1931. A hearing was had July 25, 1931. A notice of the resolution of the board fixing the amount of the award and assessing the damages was served upon respondents July 28, 1931, who, within ten days after such service upon them, gave notice of their intention to appeal to the Circuit Court from the resolution of the board fixing the award, and that they would ask for a trial *de novo*. The notice and grounds of appeal were duly served upon the State Highway Department, and filed with the clerk of the Court for Chester County. The case was heard at the November, 1931, term of Court for said county, by Judge Grimball and a jury, and a verdict was rendered in favor of respondents in the sum of $1,250.00, which was considerably more than the sum assessed and allowed by the board of condemnation. Motion for new trial was denied. From the judgment entered on the verdict, appeal is taken. The grounds of error are stated in seven exceptions.

The exercise by the State of its right of eminent domain, as it is vested in the State Highway Department for the purpose of condemning lands for public road purposes, and the method of its exercise, are provided for by Article 1, § 17, of the Constitution, and by the various statutes now embodied in the Civil Code, 1932, in Section 5813 *et sequitur*. The machinery provided is in the hands of the State. The

Governor appoints a number of citizens, from which number the Highway Department names a board of commissioners of three or more, who proceed to condemn the land needed. Members of the highway commission may be members of such board. The commissioners give notice to the landowner of their intention to take certain of his property for road purposes, and fix a day for the hearing. For this hearing the landowner may demand a jury and may offer testimony of the value of the property and of the damages done him. Either party may appeal to the Circuit Court from the award made by the commissioners, and the trial in that Court shall be *de novo*. If the State be the appellant, no further condemnation proceedings shall be had until the appeal is heard. If the landowner be the appellant, the Highway Department may pay to the clerk of the Court the amount of the award fixed by the commissioners and proceed with the roadwork. In the present case, the landowner appealed. The case was heard at the November, 1931, term of the Court for Chester County. Upon the publication of the verdict for the plaintiff, a motion for new trial was made by the Highway Department on the grounds hereinafter referred to, which motion was denied. This appeal by the highway department is predicated upon seven exceptions.

The allegation of error in exception 1 is that the verdict of $1,250.00 is excessive. The brief of appellant points out that only about a quarter of an acre was taken, and about thirteen trees destroyed. There was evidence that the tract consisted of 1 4/5 acres lying adjacent to the Seaboard Air Line Railway, and facing highway No. 9. There was differing testimony of the value of this land and nearby properties just before and just after the taking of the land. There was evidence that plaintiffs had once sold a quarter of an acre off of the lot at the price of $800.00 and had bought it back at $1,050.00 There was evidence that thirteen shade trees had been cut from the land, upon which various estimates of value are placed by witnesses. There was

evidence that the bank left in front of plaintiffs' home, their dwelling place, was at least 12 feet deep; the strip taken runs for 462 feet along the whole front of plaintiffs' property. There was evidence that industrial plants, residences, and business places had grown up in the immediate vicinity of this property, enhancing its value. The Judge and the jury visited the locus, and, since his Honor denied the motion for new trial, he must have agreed with the estimate of value fixed by the verdict.

Exception 2 charges error to the presiding Judge for that he used the following language in his charge:

"The actual value of the land means the fair market value of the land, upon a fair market, upon fair advertisement, and a fair sale at normal times. It does not mean any value in times of great inflation in currency nor does it mean the value in times of great depression. The actual value of the land means a fair market value, a fair market in normal times."

The particular assignment of error is that by this charge the jury were left to fix the value as of a time they thought to be normal, whereas they should have been instructed that the value must be fixed as of the time of taking.

It is noteworthy that appellant's counsel did not ask that such instruction be given. When the charge was being delivered this occurred:

"The Court: Now, the State Highway Department asked me to charge you this, which I will charge you.

"Mr. Hemphill: May it please your Honor, I think you have just about covered my request. Now, there is one thing I should like your Honor to get clear; that is, what is meant by the actual value of the land? As I understand it, it means the market value.

"The Court: Well, I will tell them that—

"Mr. Hemphill: I think your Honor, please, the market value is ordinary times; not when it is depressed; not when it is inflated."

Then followed the charge of which appellant now complains. Appellant did not then ask for a more specific charge as to the time at which the value should be fixed. Nor did counsel then express any dissent from the charge. The exact matter as presented by the exception was not presented to the Court until the jury had rendered the verdict and the motion for new trial had been made. In disposing of this motion, Judge Grimball said: "One of the grounds for a new trial is that I erred in my charge to the jury on the measure of damages. It is, of course, possible that I was wrong in my charge on that point. I haven't had an opportunity to study the case or authorities cited to me this afternoon on the motion for new trial. However, the record will show * * * that when I had finished charging the jury these authorities were not presented to me; and after I had charged on this particular point, I was not asked to correct my charge."

It would seem that the question should have been made on the trial and not after verdict rendered. However, the question is one of importance, and we prefer to consider and determine it.

Appellant relies mainly in support of its contention upon the case of *Board of Commissioners of Fairfield County v. Richardson*, 122 S. C., 58, 114 S. E., 632, 633. In that case Mr. Justice Cothran for the Court said this:

"It is conceded that as soon as the board of county commissioners, by resolution as provided in Section 1933, Vol. 1, Code of Laws A. D. 1912, fixed the amount of compensation and damages to which the owner was entitled, they went into possession of the condemned property. That determined when the taking occurred, and fixed the point at which damages should be assessed. The value of the owner's property which was destroyed, 'taken,' as of that date is the measure of compensation and damages. The fact that an appeal lies to the Circuit Court and a trial *de novo* had upon that issue cannot change the period at which the estimate

is to be made. That has already been fixed and cannot be changed by the accidental rise or fall in the market price of the property destroyed.

"In the case of growing unmatured crops destroyed, at any period of their existence, at any stage of development, the criterion is to ascertain: (1) What would reasonably have been produced but for the act of the condemnor; (2) what would it have been worth on the market at the time of such destruction; (3) deduct therefrom the estimated expenses of producing, cultivation, harvesting, and marketing.

"This is the only rule, in the nature of things, that the board of commissioners could have applied, for they could not have speculated upon the future market price of the cotton. It would be illogical, upon an appeal from their decision, to open up the issue upon an entirely different basis of valuation."

It will be observed that the property taken in this instance was a growing crop of cotton.

One can readily understand how the value of cotton, the price of which varies from day to day as dealers and speculators manipulate the market, must be held to be fixed at the time of the taking; but there seems to be no corresponding reason of weight why the value of land should be fixed as of the very day of the entry. The value of land is a more stable thing, not likely to vary to any great extent from day to day.

Appellant does not challenge the charge as to the definition of market value, but only as it fails to fix a definite time. We think that the instruction is not open to serious criticism. It would be manifestly unfair to the owner if the taking of the property be during a period of deep depression to fix the value as of that exact date. On the other hand, if the taking be during a period of inflated prices, it would be just as unfair to the condemnor to fix the value as of that exact period. We think the Circuit Judge exercised a wise judgment when he defined the market value as that which pre-

vailed in "normal times." We think he meant by that phrase not any special date, but used the words "normal times" as synonymous with "normal conditions."

No authority has been cited to us to the effect that the value must be fixed as of the very day of entry or taking. The common sense view seems to be that, if it be of the period immediately about the time of the taking, it would be a sufficient compliance with the rule. This excludes speculation as to future value, and excludes a valuation fixed upon former prices.

But let us, if you please, concede the strict rule for which appellant contends: How in the present case will you fix the actual date of the taking? When the plaintiffs offered in evidence the record of the condemnation proceedings, the appellant vigorously objected, and succeeded in having it excluded. Throughout the trial and during the Judge's charge there was in the record no evidence of the exact time of the taking. If the Judge had charged on this point as it is now argued he should have done, how would the jury have determined the exact date? It is set out in the statement of the transcript of record for this appeal that the notice was served on the landowners the 10th of July, 1931, that the hearing was held July 25, 1931, and notice of the resolution of the board fixing the award was served on respondents the 28th of July, 1931, *but these dates were not before the jury at the trial.*

It was incumbent on appellant to show that it was prejudiced by the error in the charge of which it complained. It has not met that obligation successfully.

The complaint is made in exception 3 that the plaintiff's attorney was allowed to make a sketch of the premises and that the plaintiff Howell was allowed to testify therefrom. It is competent for an attorney to direct the attention of the witness to the matter about which he wishes to examine him. There is no contention that the rough sketch which the attorney drew was inaccurate.

The testimony complained of by exception 4 was for the purpose of determining if it was necessary for the appellant to make a change in the road at that point. If it was not necessary and if the change injured plaintiff, the testimony was relevant.

It is charged by exception 5 that it was error to permit the plaintiff "to testify to the damages to his property, as a whole, for the reason that each element of damage should have been itemized."

. This exception is formed upon misapprehension of the record. The plaintiff had testified that his damages consisted of the taking of a quarter of an acre of land, in a line 462 feet along the front of the lot where he lived; the cutting down of a bank 12 feet deep in front of his house; the destruction of his shade trees; and the depreciation of the value of his remaining property. It was competent for him to estimate the total amount of these damages.

Exception 6 assigns as error that appellant's witnesses were not allowed to give their opinions as to the amount of damages suffered by respondents. The exception itself does not give the name of any witness who was not allowed to give his opinion. Appellant's brief refers us to pages 89, 90, and 91 of the transcript. The only witness who appears in those pages is L. H. Weir. He was asked by counsel for appellant if he thought that a paved road in front of a person's property increased the value of the property. This was purely a matter of opinion. Properly the witness was not allowed to answer it. Again he was asked if from his knowledge of real estate in that neighborhood he thought, or believed, that Mr. Howell had been damaged by the highway. This, too, was only the personal opinion of the witness. It was properly excluded.

The allegation of error in exception 7 is that "appellant's witnesses were allowed to be cross examined over the objection, to the effect that no dirt was taken off of any premises other than respondent's for the construc-

tion of a fill at some distance from the premises in question and having no connection with the same."

Howell had testified without objection that appellant had taken some 4,000 or 5,000 cubic yards of dirt from his premises and used it to put in a fill some distance away from his premises. The cross examination of Mr. Pearman, the engineer witness of appellant, proceeded at length before appellant's counsel interposed in this wise: "Mr. Humphrey: I don't see where that fill has got anything to do with it; no direct testimony has been brought out in reference to that fill, as far as I remember. If he wants to find out the number of cubic yards of dirt that was taken off of Mr. Howell's property, why Mr. Pearman can testify to it; as a matter of fact I am going to have him do it."

The very purpose of the cross examination was to elicit the information which counsel was willing to have his witness give.

The Constitution of the State provides that, when private property is taken for public use, *just compensation* shall be made to the owner. The method for the final fixing of the amount of such *just compensation* is by the verdict of a jury, which arrives at its verdict by finding the right conclusion from a consideration of the facts, and then applying its findings of fact to the law as the Court has given it.

We agree with the Circuit Judge "that both parties in this case had a fair trial before the jury." The verdict should not be disturbed. The exceptions are overruled, and the judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE BLEASE and MR. JUSTICE CARTER concur.

MR. JUSTICE STABLER and MR. ACTING ASSOCIATE JUSTICE COTHRAN concur in result.

MR. CHIEF JUSTICE BLEASE (concurring) : In the second exception, the appellant's complaint as to the instructions of the presiding Judge is based on the fact that he did not charge specifically that the damages to the respondent's land

was to be fixed *"at the time of the taking,* namely on the 28th day of July, 1931, when the resolution of the board, fixing the award, was served upon the respondents, as is the true rule, but at some time previous, when the market value of the property was much higher than at *the time of the taking."* (Emphasis added.)

It is my view that the value should be fixed as of *the time of taking.* In addition to the case of *Board of Commissioners of Fairfield County v. Richardson et al.,* 122 S. C., 58, 114 S. E., 632, cited in the opinion of Mr. Justice Bonham, see *Cayce Land Co. et al. v. Southern Railway Co.,* 111 S. C., 115, 96 S. E., 725, 728, an action relating to the proper construction of the condemnation statutes. There this Court said: "The Court erred also in holding that the compensation to which plaintiffs are entitled must be based upon the present value of the land. As we have already seen, the defendants' predecessors in title were not trespassers, but entered and built their railroads with the consent, actual or presumed, of the then 'owner' of the land, and, as they were vested with power to condemn the rights-of-way which were taken, they were entitled to take them *at a compensation based upon the value of the land at that time.* If compensation had been awarded to the plaintiffs' predecessors in title *at the time of the taking,* it would have been based upon *the value of their interests in the land at that time;* but it was not done then, and, as the payment of their compensation has been deferred until the present time, it should still be based upon *the value of their interests in the land at that time, with interest thereon from that time until it is paid.* That was expressly decided to be the correct basis of assessing compensation in a similar case. See [*Charleston & W. C.*] *Railway* [*Co*] *v. Reynolds,* 69 S. C., 481, 48 S. E., 476, which is directly in point." (Emphasis ours.)

This statement, in harmony with the holding of this Court, is found in Corpus Juris, under the article "Eminent Domain": "The fundamental doctrine that private property

cannot be taken for public use without just compensation requires that the owner shall receive the market value of his property *at the time of the taking,* unaffected by any subsequent change in the condition of the property. *  ·*  *"
(Italics ours.) 20 C. J., 826.

There was no reversible error, however, in my opinion, because of the failure of the trial Judge to definitely instruct the jury that the damages were to be assessed as of *the time of taking,* July 28, 1931, for the reason stated by Mr. Justice Bonham, namely, that there was no proof of the exact date of the taking, because of appellant's objection to evidence which would have shown that date, and for the additional reason that from the facts developed in the case, and the whole charge of the presiding Judge, the jury were fairly informed as to the approximate time of the taking, without request on the part of the appellant that they be informed as to the exact date of the taking.

It does not appear to me that appellant in its exceptions makes any complaint as to the charge of the Judge to the effect that the value of the land was not to be fixed as of "times of great inflation in currency," or as of "times of great depression." Conceding, however, that the exception does cover that question, I agree with the conclusion of Mr. Justice Bonham that the challenged instruction was not erroneous. While, as indicated above, the value of the land is to be fixed *as of the time of taking,* there are many things which can, and perhaps should be, considered in determining what the value is at the time of taking. What the land had sold for, if there had been a sale at a reasonable time previous to the time of taking, could be properly considered. The conditions at the time of such sale might be examined into. The financial condition of the country and those who might ordinarily become purchasers would be matters of proper inquiry. The ability of the owner to hold the property through times of depression, looking to a cessation of such times when he could get a better price, might not be an impertinent matter.

A reasonable probability that the land in a little while will be worth much more or less than it could then be sold for is something to be considered in fixing its value. The history of our country shows that, as a general rule, excepting in times of great depression, there is a gradual and constant increase in land values.

"Market value of property taken or injured for public use means the fair value of the property as between one who wants to purchase and one who wants to sell, its present value at a sale which a prudent owner would make if at liberty to fix the time and conditions of sale, *not what could be obtained for it at a forced sale or under peculiar circumstances, nor a value obtained from the necessities of another.*" (Emphasis ours.) 20 C. J., 727.

"The market value has also been said to be: 'What it fairly may be believed that a purchaser in fair market conditions would have given for it in fact—not what a tribunal at a later date may think a purchaser would have been wise to give, nor a proposition of the advance due to its union with other lots.' *New York v. Sage,* 239 U. S., 57, 61, 36 S. Ct. 25 [60 L. Ed., 143]." 20 C. J., 727.

"The price established artificially and temporarily by booming methods is not the equivalent of market value, which is regulated by the natural laws of supply and demand. *Suburban Land Co. v. Arlington,* 219 Mass., 539, 107 N. E., 432." 20 C. J., 727.

"If the condemnation takes place during a temporary depression due to a stringency in the money market, it seems the value may be estimated as of the period immediately preceding such depression. *U. S. v. Inlots,* 26 Fed. Cas. [page 490], No. 15,441a." 20 C. J., 727.

The Judge in this case expressly charged the jury that they were not "to go into the realm of speculation," and that they should not "go into any realm of fictitious amounts." His charge, taken as a whole, in my opinion, fairly declared the law.

Appellant's fourth exception, that there was error in permitting witnesses for the respondents to testify as to the condition and course of the highway beyond the premises involved, is untenable, for the reason that, under the statute, "due allowance shall be made for any special benefit which may accrue to owner." The course, length, and width, as well as the type and character of highway to be constructed through one's premises, may have material relation to the benefit accruing therefrom to the premises.

As to exception 6. If a witness is in position to give, because of his knowledge and acquaintance with conditions, an opinion that a paved road in front of one's property will increase the value thereof, I think the testimony is competent. Likewise, it is my view that a witness acquainted with the conditions may testify what his opinion is as to the damages to lands taken in condemnation. The value of lands and damages thereto are always, more or less, matters of opinion, and witnesses, experts or nonexperts, who have proper information upon which to base opinions, should be allowed to testify. See *Knight v. Sullivan Power Co.,* 140 S. C., 296, 138 S. E., 818; *Jones v. Fuller,* 19 S. C., 66, 45 Am. Rep., 761; 10 R. C. L., § 187, page 218; 22 C. J., 586.

The exception here to the effect that the Court erred in refusing to allow appellant's witnesses to give their opinions as to the amount of damages suffered by respondents to their premises by reason of the construction of the highway is very indefinite, as neither in the exception nor in the argument is reference made to the proffered testimony which the Court ruled out. Evidence of this character is very much within the discretion of the trial Judge.

In cases of the character of this, where the jury, men drawn from the county and acquainted with conditions generally, view the premises and the surroundings, I am not inclined to reverse a cause because of some error in the admission or rejection of testimony, since the jurors, from their view and knowledge of conditions, will probably come to a

just conclusion without regard to harmful testimony admitted or proper testimony not allowed. This Court should sustain the rulings of the trial Judge, relating to matters of testimony, looking to the proper valuation of lands sought to be taken in condemnation proceedings, unless he permits the witnesses to go entirely too far afield.

Except where I have indicated herein some modification of the views expressed by Mr. Justice Bonham, I am in entire accord with what he has said. I agree thoroughly with him that the parties had a fair and impartial trial, and there is no good reason for our interference with the judgment appealed from.

MESSRS. JUSTICES STABLER and CARTER, and MR. ACTING ASSOCIATE JUSTICE COTHRAN concur.

MR. JUSTICE BONHAM concurs in result.

MR. ACTING ASSOCIATE JUSTICE COTHRAN (concurring in result) : I concur in the result and especially as to the disposition of exception 6 in the concurring opinion of the Chief Justice.