STATE of Alaska, Appellant,
Cross-Appellee,

v.

Anthony D.M. DOYLE; Lowell Thomas,
Jr.; Tay Thomas; Rodman Wilson;
Gwynneth Wilson; John Overbey; Su-
san Overbey, Appellees, Cross-Appel-
lants.

Nos. S–1002, 1035.

Supreme Court of Alaska.

March 27, 1987.

Ross A. Kopperud, Asst. Atty. Gen., Anchorage, Harold M. Brown, Atty. Gen., Juneau, for appellant, cross-appellee.

James N. Reeves, Bogle & Gates, Anchorage, for appellees, cross-appellants.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

This appeal and cross-appeal involve claims brought by owners of residential properties for damages allegedly sustained as a result of airplane noise attributable to the construction and operation of a new runway at Anchorage International Airport. The state, which owns and operates the airport, appeals from the judgment of the superior court rendered in favor of the homeowners on their inverse condemnation claims. The homeowners cross-appeal, challenging primarily the superior court's order of partial summary judgment which dismissed their nuisance and trespass claims and the award of attorney's fees.

### I. *Facts and Proceedings Below.*

The State of Alaska constructed a new north-south runway ("the runway") at Anchorage International Airport, which was commissioned for use on October 29, 1980. Use began in November 1980. Anthony Doyle, Lowell and Tay Thomas, Rodman and Gwynneth Wilson, and John and Susan Overbey ("homeowners") own residential real properties in the Tanaina Hills subdivision, situated approximately one mile south of the southern end of the runway. The homeowners contend, and the superior court found, that aircraft taking off toward the south from the runway and landing from the south on the runway pass over the area in which their properties are located at extremely low altitudes, thereby causing adverse effects (the most significant of which is noise) which have diminished the values of their properties. The state denies that the homeowners have been damaged because the southern takeoffs and landings are infrequent, and because the subject properties have not decreased in value.

In October 1982, the homeowners filed a complaint seeking compensation on theories of inverse condemnation of their properties, nuisance, and trespass. The superior court granted the state's motion for partial summary judgment, dismissing the nuisance and trespass claims on the ground that the complaint did not sufficiently state independent claims for relief under either of these theories. The court also denied the state's motion in limine, which sought to restrict the homeowners' evidence to the preliminary appraisal report and deposition answers furnished to the state before trial. The matter was then tried to the court without a jury on the inverse condemnation claims.

At the close of the evidence, the superior court denied the state's motion for a direct-

ed verdict, entered judgment for the homeowners, and awarded them damages in the amount of $488,000, plus prejudgment interest, for a total of $715,000.22 exclusive of costs. In finding for the homeowners, the superior court essentially adopted their theory of the case: it held that a taking of an avigation easement occurred on October 29, 1980, and found the homeowners' valuation evidence more credible than that of the state. The court also denied the homeowners' motion to award prejudgment interest compounded on an annual basis, ordering computation at the simple interest rate of 10.5% from October 29, 1980 until the date of judgment.

Subsequent to the filing of this appeal, the superior court entered an order awarding attorney's fees of $76,786.00 to the homeowners pursuant to Alaska Rule of Civil Procedure 72(k).

A. *Did the Superior Court Err in Concluding That a Claim for Inverse Condemnation is Legally Cognizable When Governmental Action Adversely Affected the Rate of Appreciation of Property But Did Not Cause Its Market Value to Decrease?*

The state argues that the homeowners cannot claim inverse condemnation of their

1. The state argues that the superior court erred in denying its motion for directed verdict. The state moved for a directed verdict on grounds that (1) the homeowners failed to prove or to put into evidence facts showing that their properties decreased in value; (2) that the homeowners' appraisals of damages improperly include damages allegedly incurred beginning in 1973–74 (as of the date of public announcement of the runway proposal), and that recovery for those damages is barred by the statute of limitations for inverse condemnation; and (3) that the homeowners' appraisals failed to account for the effects on the subject properties of airport noise generated by traffic on the east-west runway and attributable to the properties' general proximity to the airport. The superior court denied the motion without addressing the merits.

2. The superior court's conclusions of law read in part as follows:

2. ... [T]he property values of plaintiffs' real property have been damages or adversely affected by the noise resulting from flight operations involving the North-South Runway.

properties because they did not prove that the fair market value of their properties decreased as a result of the noise attributable to the operation of the new runway.[1] More particularly, the state asserts that the superior court erred in concluding that a claim for inverse condemnation is legally cognizable in the circumstance "where competent proof establishes that the rate of appreciation of property value has been adversely affected by governmental action," even though the property's market value has not decreased.[2] The state further argues that the homeowners are not entitled to any damages under the takings clause of the Alaska Constitution because they have failed to prove any reduction in the fair market value of their properties attributable to the operation of the runway. We reject these contentions.

It is established that the proper measure of damages in an eminent domain proceeding in Alaska is the difference in the fair market value of the property before and after the taking. *Gackstetter v. State*, 618 P.2d 564, 565 (Alaska 1980).[3] Article I, section 18 of the Alaska Constitution provides that: "Private property shall not be taken or *damaged* for public use without just compensation." [Emphasis added.]

a. In this regard, the Court rejects defendant State's contention that no claim for inverse condemnation is legally cognizable unless there is an actual *decrease* in property value. Rather, the Court agrees with plaintiffs that such a claim lies where competent proof establishes that the rate of appreciation of property value has been adversely affected by governmental action. In the Court's view, such an adverse impact constitutes a "taking" or property damage for which just compensation must be paid.
[Emphasis in original.]

3. This court has applied this measure in actions by a landowner against the government for other kinds of damage, *see Alsop v. State*, 586 P.2d 1236, 1240 (Alaska 1978) (property owner must show decrease in value due to highway modification); and it has been uniformly applied in other jurisdictions in the specific context of inverse condemnation arising from noise due to airplanes passing over or near the property in question. *See, e.g., Alevizos v. Metropolitan Air Comm'n*, 298 Minn. 471, 216 N.W.2d 651, 662 (1974); *Martin v. Port of Seattle*, 64 Wash.2d

We have held that this clause should be liberally interpreted in favor of the property owner, *see Alsop v. State,* 586 P.2d 1236, 1239 & n. 7 (Alaska 1978), and that the inclusion of the term "damage" affords the property owner broader protection than that conferred by the fifth amendment of the federal constitution. *See State v. Hammer,* 550 P.2d 820, 823–24 (Alaska 1976). We have also stated: "The term just compensation implies *full indemnification* to the owner for the property taken. In other words the property owner *should be placed as fully as possible in the same position as he was in prior to the taking of his property."* *Ketchikan Cold Storage Co. v. State,* 491 P.2d 143, 150 (Alaska 1971) (emphasis added). *See also Lange v. State,* 86 Wash.2d 585, 547 P.2d 282, 285 (1976) (en banc); *Defnet Land & Inv. Co. v. State ex rel. Herman,* 103 Ariz. 388, 442 P.2d 835 (1968) (en banc); J. Sackman, 4 Nichols' The Law of Eminent Domain § 12.1[4] (rev. 3d ed. 1979).

Other courts have concluded that damages awarded to property owners should include compensation for a loss of appreciation caused by the governmental impairment. In *Steiger v. City of San Diego,* 163 Cal.App.2d 110, 329 P.2d 94 (1958), significant appreciation in land values created problems in valuation of the subject property before and after the government impairment. The California court justified the inclusion of loss of appreciation in the damages award on the grounds that the award reflected the difference between the value of the property after the impairment and what the value would have been if the impairment had not occurred:

> The trial judge, as the measure of damages, used the difference in the reasonable market value of the property before and after the injury. Neither party quarrels with this rule of damages but, in effect, defendant city says there was no evidence on which the court could apply this rule and there was no differ-

ence in the reasonable market value because the evidence reflects the reasonable market value was greater than it had been before the drainage installations. Defendant city does not contend the installations enhanced the market value but does insist that since there was evidence that the value of the property was greater in later years the court had no right to award damages. Defendant city's position would require a court to hold that where there is a general economic inflationary period causing an increased price, and damage is sustained during that period of time, there can be no dollar recovery. We do not believe this position is sound. In the instant case there is substantial evidence that the land without the damage was worth $131,800 and with the damage, $83,500. Further, there was evidence that property in the area had appreciated in value.... It is common knowledge that land in California, and particularly southern California, has had a heavy appreciation in market price and value during the time period here in question.... Under the evidence in this case the court was justified in making an award of $20,000....

*Id.* 329 P.2d at 98–99. *See also State ex rel. Herman v. Southern Pacific Co.,* 8 Ariz.App. 238, 445 P.2d 186, 189 (1968) (fair market value is not the only means for determining just compensation).

In a recent inverse condemnation decision involving airport noise, the Washington Supreme Court similarly recognized the importance of taking into account the factor of appreciation and adjusting the "loss of market value" measure accordingly:

> In inverse condemnation actions ... the landowner is entitled to full and fair compensation for the loss of his property rights. In many instances this measure is the difference between the market value of the land before the injury and the

309, 391 P.2d 540, 547 (1964), *cert. denied,* 379 U.S. 989, 85 S.Ct. 701, 13 L.Ed.2d 610 (1965) (en banc); *Thornburg v. Port of Portland,* 233 Or. 178, 376 P.2d 100, 110 (1962) (en banc); *Aaron v. City of Los Angeles,* 40 Cal.App.3d 471, 115

Cal.Rptr. 162, 177 (1974), *cert. denied,* 419 U.S. 1122, 95 S.Ct. 806, 42 L.Ed.2d 822 (1975). It is well settled that interference from airplane noise will sustain a claim in inverse condemnation, *see* cases cited *supra.*

value immediately after the injury. Where the injury is permanent but also increases over time, the full measure of damages is the total loss of market value traceable to the interference. Thus a landowner's recovery will not be diminished by the appreciation of value in the general real estate market, if any. Otherwise, if an unadjusted market value measure were applied, in a period of increasing property values the appreciation during a ten-year period of continuing interference conceivably could offset the loss of value inflicted by the interference. *Highline School Dist. No. 401 v. Port of Seattle,* 87 Wash.2d 6, 548 P.2d 1085, 1090 n. 5 (1976) (en banc) (citations omitted).[4]

We find the foregoing authorities persuasive. A claim for loss of appreciation of property is compensable if it represents value that would have been realized as of the date of taking, if the taking had not occurred.[5] The homeowners' appraisers in this case employed the "before and after" rule, based on the October 29, 1980 taking date, to determine the value of the subject properties in this case, although they denominate it the "inside-outside" method:[6]

> The inside, outside analysis is merely an explanation of that before and after situation we have here. In other words, the inside is, so to speak, the after fact approach and the outside value would be the before value, before the north/south runway....

> ....

> [W]e valued the property as of October 29th on the assumption that the runway was not built and we called it an outside value because we used comparables outside the impacted area and then we also valued the subject's properties [sic] ... on an inside value based on information found inside the impacted area.

> ....

> [T]he method that we used was the inside/outside approach to value of the affected properties. And it's sometimes called the before and after approach....

**4.** Other cases have held that increases in property value due to inflation are properly considered in determining property awards in condemnation cases, *see, e.g., Greater Baton Rouge Port Comm'n v. Watson,* 224 La. 136, 68 So.2d 149, 906 (1953); *City of Teague v. Stiles,* 263 S.W.2d 623, 629–30 (Tex.Civ.App.1953), and a number of courts have departed from strict application of the market value rule in times of deflationary economic conditions in order to avoid an unjust result. *See, e.g., In re Board of Water Supply,* 277 N.Y. 452, 14 N.E.2d 789, 792 (1938); *Howell v. State Highway Dep't,* 167 S.C. 217, 166 S.E. 129 (1932); *see generally,* Annotation, *Changes in Purchasing Power of Money as Affecting Compensation in Eminent Domain Proceedings,* 92 A.L.R.2d 772, 783–89 (1963). Moreover, we have said that achieving the goal of just compensation "must not be deterred by rigid evidentiary rules or technical formulas.... '[W]here rigid application of even a settled rule [for determining value] will produce injustice it must be departed from so far as made necessary by the circumstances of the case....'" *Babinec v. State,* 512 P.2d 563, 570 (Alaska 1973), (quoting in part *Territory of Hawaii v. Adelmeyer,* 45 Hawaii 144, 363 P.2d 979, 985 (1961)). *See also Alexander v. State Highway Comm'n,* 147 Mont. 367, 412 P.2d 414, 416 (1966); *Napa Union High School Dist. v. Lewis,* 158 Cal.App.2d 69, 322 P.2d 39, 41 (1958).

**5.** Adoption of the state's position would lead to the result that a landowner could not recover damages if the property in question increased in value in any amount from its pre-taking value, even if it would have increased to a greater degree absent the state's interference.

**6.** Under the comparable sales approach, the requisite determination of the "before" and "after" values of a property entails comparing values of similar properties (as indicated by consummated sales during the relevant time frame) which are free of the interference complained of ("before" values) with the values of similar properties which are subject to the interference ("after" values). *See Haeussler v. Braun,* 314 N.W.2d 4, 10 (Minn.1981); Pittle, *Valuation of Avigation Easements,* in Valuation for Eminent Domain 197 (E. Rams ed. 1973) (method generally accepted by courts for establishing value of easement is study of transactions relating to properties which have and have not been affected by flights of aircraft and which are comparable to the subject property). Such a determination of the decrease in value caused by the governmental action in issue will necessarily reflect the rate of appreciation of the subject property: if the properties unaffected by the taking, selected to calculate the "before" value, in fact appreciated faster than those affected by the taking, selected to calculate the "after" value, the comparison of the two will reflect the differential.

For each of the properties appraised in this way, the homeowners' experts found "a fairly substantial diminution in value compared to the outside location." We thus conclude that the superior court did not err in holding that in the circumstances of this case the homeowners had a legally cognizable claim for damages.

B. *Did the Superior Court Err in Accepting The Opinions of The Homeowners' Appraisers and Therefore in Finding That The Subject Properties Sustained Compensable Damage as a Result of Aircraft Flight Involving the North-South Runway?*

Under this specification of error the state contends that three of the superior court's findings of fact relating to the homeowners' appraisals and to the damages based thereon are clearly erroneous.[7]

■ The first finding that the state questions, relating to the homeowners' appraisals and to the damages based thereon, is:

34. The plaintiffs' appraisers, Follett and Boucher, appraised each property using an "inside/outside" method, concluding that each had been diminished in value as of October 29, 1980 in the amount stated in Paragraph 36 of these Findings of Fact.

The state argues that this finding is incorrect because, although Follett did testify as to substantial damages, he did not state that any of the subject properties

"diminished in value" and that this finding is also inconsistent with Conclusion of Law 2(a) that no decrease in value occurred. Follett did testify that properties in the Tanaina Hills subdivision were increasing in value at all times relevant to the case; he also testified that the "trend analysis" he performed indicated that the subject properties were appreciating at an annual rate of approximately 13.7%. However, he also testified that the average appreciation rate for similar properties in neighborhoods unaffected by airport noise was about 16%, and stated in his memorandum that for similar outside properties the annual rate of appreciation ranged from 13% to 20%. He and Boucher concluded that "the properties inside the subdivision, although they went up in value, appreciated at a lower rate than comparable homes that were outside the impacted area."

Given the foregoing we cannot say that the finding of the superior court was clearly erroneous.[8]

The state also challenges finding of fact No. 35, which reads:

35. The Court finds that Follett and Boucher are competent appraisers, and accepts their opinions in this case as accurate. The Court particularly found Mr. Follett to be credible and expert, and hence, accorded substantial weight to Mr. Follett's methodology and opinion testimony. . . .

Our review of the record persuades us that there is no basis for the state's attack on this particular finding.[9]

---

7. This court will only set aside a finding of fact which is clearly erroneous, *see* Alaska R.Civ.P. 52(a); that is, when we are convinced, in a definite and firm way, that a mistake has been made and are well persuaded by the party seeking to have the findings set aside. *Alaska Foods, Inc. v. American Mfr.'s Mut. Ins. Co.,* 482 P.2d 842, 848 (Alaska 1971).

The state's burden in contending that the trial court erred in its determination of damages is "especially heavy with respect to condemnation proceedings, where considerable latitude must be accorded the trier of fact due to the complicated nature of property appraisals." *State v. Alaska Continental Dev. Corp.,* 630 P.2d 977, 987 (Alaska 1980). *See also Ketchikan Cold Storage Co. v. State,* 491 P.2d 143, 151 (Alaska 1971) (property appraisal is "not an exact science" but

"requires a complex balancing of the various principles and techniques which are utilized in reaching the final estimate of value.").

8. Boucher corroborated this testimony, stating that applying the inside-outside approach to the subject properties indicated "a fairly substantial diminution in value *compared to the outside location.*" [Emphasis added.] The underscored words thus represent the crucial omission from Finding No. 34. Even if technically erroneous, as it stands the finding does not affect the result reached by the superior court and cannot be considered prejudicial error.

9. *See B.B. & S. Constr. Co. v. Stone,* 535 P.2d 271, 274 n. 4 (Alaska 1975) ("Credibility choices are for the trier of the facts to make and his

Thirdly, the state also challenges the superior court's finding which sets forth the amounts of damages that it found the homeowners sustained:

36. The Court finds that the subject properties suffered compensable damage as a result of the new north-south runway, as of October 29, 1980, in the following amounts:

| | |
|---|---|
| Lot 2 | $110,000 |
| Lot 4 | $ 90,000 |
| Lot 5 | $ 80,000 |
| Lot 24 | $ 28,000 |
| Lot 1 | $ 15,000 |
| Lot 3 | $ 15,000 |
| Tract A | $150,000 |

The state argues that these amounts of damages cannot be supported, even if the homeowners' appraisers' testimony is correct, because the difference in appreciation rates between the inside and outside properties (13.7% versus 16%) could not yield such large reductions in value.

■ We think the state's contention must be rejected, since the superior court's finding as to damages is supported by adequate evidence. Furthermore, the state overlooks the testimony that trend analysis alone does not indicate the market value of individual properties and that the percentages cannot be applied across the board to reach estimates of value:

A trend is merely an average and there is always the possibility that the average doesn't cover the particular properties involved.... [C]urrently there's an oversupply of lower priced condominiums in Anchorage and so they are flat market [sic] or possibly a decrease ... whereas you may have a situation of large homes there's an under supply, they could be increasing and so a trend would average the two and might show an increase or a decrease but it wouldn't reflect what was happening in individual properties.

One appraiser also added that the trend of 13.7% for properties within the subdivision was based on only two sales and resales of properties and thus would not lead to any

selection will generally be accepted by the re-

reliable conclusion concerning all the homes in the subdivision.

C. *Did the Superior Court Err in Denying the State's Motions in Limine Seeking to Limit the Testimony of the Homeowners' Appraisers and its Motion to Allow an Offer of Proof to Rebut "Surprise" Evidence Presented by the Appraisers?*

1. *Motions in Limine.*

The state filed a motion in limine seeking to limit the evidence presented by the homeowners' appraisers to the preliminary appraisal report and deposition answers provided to the state three weeks before trial, and argued that allowing additional appraisal evidence at trial would be unfair because the homeowners had not disclosed the reasoning and analysis supporting their appraisers' opinions. The homeowners argued in opposition that the appraisers' study and analysis was not yet complete when the parties had exchanged appraisal reports, that the additional information reflected the appraisers' continued work, and that the appraisers had produced no new formal written report and would testify consistently with the opinions previously expressed. The court denied the motion in limine, indicating that proof of a willful evasion or failure to comply with discovery procedures would be necessary to overcome the policy against exclusionary evidentiary orders, but continued the trial for one day, ordering the parties to take supplemental depositions in order to cure potential problems of surprise and prejudice and to produce all relevant supporting documentation that would be used at trial. The superior court left open the possibility that a further continuance would be granted if the supplemental depositions suggested additional trial preparation time was needed.

The state renewed its motion in limine immediately prior to the date the homeowners' appraisers were scheduled to testify, claiming it had been surprised by additional data revealed in the supplementary depositions and newly produced report. The court denied the renewed motion but granted the state a continuance of approxi-

viewing court.").

mately two weeks to review the new information and prepare for cross-examination of the appraisers. The state did not argue that the continuance was insufficient nor did it object to proceeding with the appraisers' testimony when the trial resumed.

■ Considering the superior court's implicit finding that the homeowners' actions did not rise to the level of willful evasion of discovery obligations, we hold that the superior court did not abuse its discretion in giving continuances in lieu of granting the state's motions in limine.[10]

### 2. *Offer of Proof.*

The state also argues that the superior court's rejection of its offer of proof prejudiced its efforts to rebut the homeowners' damages estimates, contending that the denial of the motion to allow the offer of proof precluded it from introducing testimony and market data to rebut the homeowners' new evidence. The state's counsel asked to make the offer of proof after the superior court had twice sustained the homeowners' objections to testimony concerning real estate transactions ("comparable sales") not previously disclosed during discovery; the court suggested that the offer of proof be submitted in writing "after the trial day" and in the meantime sustained the homeowners' objection. Several weeks later the state made its formal offer of proof, a lengthy document containing evidence "discovered or confirmed" during the two-week continuance. The

homeowners opposed the introduction of this evidence on the grounds that the offer of proof had been untimely and included substantial evidence which had not been previously offered by the state and excluded at trial. The court denied the offer of proof.

In this case, the sustained objections, in response to which the state made its offer of proof, concerned questions involving expert opinions based on specific real estate transactions that counsel for the state conceded in part may have constituted newly developed information not shared through discovery, and as to which the trial court limited the examination of the witness to information previously exchanged or already in the record. A comparison of the transcript and the state's offer of proof demonstrates that the offer of proof clearly exceeded the scope of the evidence which the superior court excluded.

■ We see no error in the superior court's rejection of the state's offer of proof.[11] The court's ruling reflected its judgment that this evidence had not been properly disclosed through discovery, that the state's offer was untimely, and that the state's offer contained evidence not reasonably within the scope of the court's exclusionary rulings.[12]

### D. *Cross-Appeal.*

The homeowners in their cross-appeal challenge five rulings of the superior court:

---

**10.** *See Advanced, Inc. v. Wilks,* 711 P.2d 524, 528 (Alaska 1985) (finding no error where party, after declining a continuance, failed to show that additional time would not have cured prejudice resulting from the failure to supplement interrogatories); *Grimes v. Haslett,* 641 P.2d 813, 822, 823 (Alaska 1983) (upholding superior court's provision of additional time based on its belief that preclusion of testimony would be too harsh a sanction).

**11.** An offer of proof made when the trial court sustains an objection to a question asked of a witness at trial allows the questioning party to show what is expected to be proved by the witness and to indicate the purpose for which the excluded evidence is offered. 9 C. Wright & A. Miller, Federal Practice and Procedure § 2414, at 373 (1971). The main purposes of the rule providing for an offer of proof are to permit the trial judge to reevaluate his decision to sustain the objection in light of the actual

evidence to be offered and to permit the reviewing court to determine if the exclusion affected the substantial rights of the offering party. *Fortunato v. Ford Motor Co.,* 464 F.2d 962, 967 (2d Cir.), *cert. denied,* 409 U.S. 1038, 93 S.Ct. 517, 34 L.Ed.2d 487 (1972). *See* 10 J. Moore & H. Bendix, Moore's Federal Practice § 103.22, at I–31 (2d ed. 1985). Moreover, the court has discretion to reject an offer of proof that is not made until the party has rested his case. 9 C. Wright & A. Miller, Federal Practice and Procedure § 2414, at 376 (1971). *See Nelson v. Nelson,* 171 F.2d 1021 (D.C.Cir.1948) (per curiam).

**12.** In its direct appeal the state also asserts that the superior court erred in its findings of fact concerning the opinions of the state's appraisers. More particularly, the state challenges the following findings of fact:

32. The State's appraisers, Lietz and Dirksen, testified that there was no adverse impact

(1) the grant of the state's motion for partial summary judgment dismissing the homeowners' nuisance and trespass claims; (2) the denial of the homeowners' motion for leave to amend their complaint; (3) the denial of their motion to strike the opinion testimony of the state's appraisers as lacking foundation; (4) the computation of prejudgment interest on the damage award; and (5) the attorney's fees award.

### 1. The Superior Court's Grant of Partial Summary Judgment Dismissing Homeowner's Nuisance and Trespass Claims.

The homeowners in their reply brief state that they will waive their cross-appeal of this issue in the event this court affirms the superior court's judgment on their damage claim. Since we have affirmed the superior court's judgment on the inverse condemnation claim, this issue is deemed waived.[13]

### 2. The Superior Court's Denial of Homeowners' Motion to Amend Their Complaint in Connection With Their Nuisance and Trespass Claims.

As to this specification of error, the homeowners have again indicated that they will waive their cross-appeal as to this issue in the event of an affirmance on the direct appeal. Thus, we need not reach this issue.

### 3. The Superior Court's Denial of Homeowners' Motion to Strike the Opinion Testimony of the State's Appraiser.

The homeowners concede that we need not reach this issue if this court affirms the superior court's judgment on the inverse condemnation claims.

### 4. The Superior Court's Computation of Prejudgment Interest.

The homeowners contend that the superior court erred in declining to award prejudgment interest at a rate of 10.5% compounded annually, because awarding simple interest on the judgment at that rate does not yield the substantial equivalent of what they would have received had compensation been paid on the date of the taking. The state does not contest the homeowners' entitlement to prejudgment interest at 10.5%, but does argue that the superior court properly computed the award on a simple interest basis.

■ AS 09.30.070 provides that, absent a specific written contractual agreement, the

---

on any of the properties. The premises upon which this opinion was based are logically fallacious. The data upon which this opinion was based are, to some extent, erroneous, exaggerated and unconfirmed.

33. The State's appraisers did not appraise any of the subject properties, nor did they attempt to estimate their values (with or without the north-south runway) as of any date. Rather, such experts used a general property value "trend analysis," based on only a few actual instances of sales and resales of properties in "control areas."

35. ... The Court finds that the testimony of Dirksen and Lietz was less credible and less persuasive [than that of plaintiffs' appraisers], and therefore rejects their opinions. Indeed, the Court found Mr. Lietz's testimony to be somewhat evasive and non-responsive throughout the trial. The Court accorded little weight to defendants' experts' analysis and opinion testimony.

The state basically argues that the trial court erroneously considered the data on which the state's appraisers relied in formulating their opinions to be unreliable and that the court's evaluation of their credibility was not well-founded. In upholding both the superior court's findings of fact in regard to the homeowners' experts' testimony and its rejection of the state's offer of proof, we also reject the state's arguments in favor of their own experts.

13. Appellate Rule 212(c)(1)(f) provides that:
(1) The brief of the appellant shall contain the following items under appropriate headings and in the order here indicated:

. . . . .

[f] A statement of the issues presented for review. In cases of cross-appeal the cross-appellant may present a statement of the issues presented for review which would require determination if the case is to be reversed and remanded for further proceedings in the trial court. In the event that the decision is affirmed on the appeal, such issues on the cross-appeal may be deemed waived by the appellate court.

rate of interest on judgments and decrees for the payment of money is 10.5% per year. In *Alyeska Pipeline Serv. Co. v. Anderson,* 669 P.2d 956, 956 (Alaska 1983), we held that AS 09.30.070 does not provide for compound interest on judgments.[14] We affirm the superior court's ruling declining the homeowners' request for compound prejudgment interest.[15]

5. *The Superior Court's Award to the Homeowners of Less Than the Full Amount of the Attorney's Fees Owed Under Their Contingent Fee Agreement.*

The homeowners argue that the superior court erred in awarding them less than the actual amount of attorney's fees owed un-

der their negotiated contingent fee agreement because they do not retain the full amount of "just compensation" to which they are constitutionally entitled. The state counters that the superior court properly awarded fees pursuant to Civil Rule 72(k) by multiplying the hours actually spent working on the case by the normal hourly billing rate charged by each person performing the work.[16]

■ In *Williams v. City of Valdez,* 603 P.2d 483, 494 & n. 38 (Alaska 1979), we indicated that Civil Rule 72(k)(5) could, where appropriate, apply in inverse condemnation cases.[17] Although full attorney's fees are the norm under Civil Rule 72, those fees must be both reasonable and necessarily incurred to obtain just compen-

---

**14.** In the context of just compensation awards, several courts have disallowed compound interest. *See United States v. 97.17 Acres, More or Less,* 511 F.Supp. 565, 567–68 (D.Md.1981); *Walker v. Acting Director, Dept. of Forests and Parks,* 284 Md. 357, 396 A.2d 262, 267 (1979); *In re City of New York,* 179 N.Y. 496, 72 N.E. 522 (N.Y.1904); *see also* 3 J. Sackman, Nichols' The Law of Eminent Domain § 8.63[3], at 8–360–62 (rev. 3d ed. 1985).

**15.** We note that the Ninth Circuit has approved the compounding of prejudgment interest as a means of achieving the goal of just compensation.

The payment of interest on deficiency awards in condemnation cases is designed to satisfy the constitutional standard of just compensation by putting the owner "in as good position pecuniarily as he would have occupied if his property had not been taken." It is assumed that a person who received the pecuniary value of his property as of the date of the taking would invest these funds in a reasonably prudent manner. Thus, it is proper, when payment of just compensation is delayed, to fix interest on any deficiency award at the rate "a reasonably prudent person investing funds so as to produce a reasonable return while maintaining safety of principal" would receive.... *Compounding of interest is appropriate to compensate the landowner for the loss of use of the interest that the deficiency award would have been producing for them during the interim.*

*United States v. 429.59 Acres of Land,* 612 F.2d 459, 464 (9th Cir.1980), (quoting in part *United States v. Miller,* 317 U.S. 369, 373, 63 S.Ct. 276, 279, 87 L.Ed. 336 (1943)) (citation omitted) (emphasis added). *Cf. Kirby Forest Indus. v. United States,* 467 U.S. 1, 10, 104 S.Ct. 2187, 2194, 81 L.Ed.2d 1, 11 (1984) (interest on delayed payment in eminent domain must be "sufficient to ensure" a monetary position for landowner as

favorable to landowner as if payment coincided with the taking.)

In this case, no showing was made that assessing compound interest was necessary in order to produce a sum comparable to the then-current market rates. *See City of Austin v. Foster,* 623 S.W.2d 672, 677 (Tex.Civ.App.1981) ("[I]f such [compound prejudgment] interest is claimed ..., it must be alleged and adjudicated in the regular course of trial if such damages are not determinable as a matter of law, as would be the case if a contract or statute provided for compound interest."). Thus, we leave open the question of whether in a proper case compounding of prejudgment interest would be appropriate in eminent domain or inverse condemnation litigation.

**16.** The superior court awarded $76,786 to the homeowners collectively, $66,849.50 in attorney's fees and $9,936.50 in paralegal fees. The billing records submitted by counsel indicate that the court disallowed only 58.7 hours out of 591.8 hours of attorney time actually spent on the case, and 9.5 hours out of 247.5 hours of paralegal time actually spent. The court based its individual rulings on the objections made by the state to specific billings.

**17.** Alaska Rule of Civil Procedure 72(k)(5) provides:

*Costs.* Costs and attorney's fees incurred by the defendant shall not be assessed against the plaintiff, unless:

....

(5) allowance of costs and attorney's fees appears necessary to achieve a just and adequate compensation of the owner.

Attorney's fees allowed under this paragraph shall be commensurate with the time committed by the attorney to the case throughout the entire proceedings.

sation. *Resource Inv. v. State, Dept. of Transp. & Pub. Facilities,* 687 P.2d 280, 283 (Alaska 1984). Thus, in applying Civil Rule 72, the trial court "may award less than the full amount of the charge[s] when it finds the amount unreasonable in view of the nature and extent of the services rendered." *Badger Constr. Co. v. State,* 628 P.2d 921, 923 (Alaska 1981) (footnote omitted). The trial court's decision to award less than a party's actual fees will not be disturbed unless that decision appears to constitute an abuse of discretion. *Resource Inv.,* 687 P.2d at 283. Here we can see no abuse of discretion on the part of the superior court.

The homeowners argue that the actual attorney's fees owed under their contingent fee agreement were reasonable and necessarily incurred because they could not afford to pay fixed fees on an hourly basis and because such agreements represent the norm in condemnation litigation practice. In support of their position, the homeowners cite *Wise Mechanical Contractors v. Bignell,* 718 P.2d 971 (Alaska 1986). In *Bignell,* we found no abuse of discretion by the trial court in taking into account the contingency of counsel's right to compensation in determining a reasonable attorney's fee. We pointed to Alaska Code of Professional Responsibility DR 2–106(B), which includes contingency among the factors to be considered in determining a reasonable fee, and emphasized the necessity for contingent fee agreements in worker's compensation cases due to the injured worker's inability to pay. *Id.* at 974–75. We did not, however, suggest that a contingent fee agreement should control the amount of attorney's fees awarded, merely that the agreement could be considered.

Here the superior court had the facts concerning the contingent fee agreement before it when it considered the homeowners' request for $357,500.10 in attorney's fees. Given this circumstance and considering the issues involved and the length of trial, as well as the fact that the just compensation awarded to the homeowners was $715,000.22, we conclude that the superior court did not abuse its discretion in its award of attorney's fees by

making such fees commensurate with the time committed by counsel.

AFFIRMED.