B & G MEATS, INC., d/b/a Mr. Prime Beef, an Alaska Corporation, Appellant,

v.

STATE of Alaska, Appellee.

No. 3940.

Supreme Court of Alaska.

Oct. 12, 1979.

William G. Azar, Kennelly & Azar, Anchorage, for appellant.

Hal P. Gazaway, Asst. Atty. Gen., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION

MATTHEWS, Justice.

B&G Meats operates a wholesale/retail meat store from a leased building on property adjacent to the New Seward Highway. This property lies between the interchange at Dowling Road and Dimond Boulevard. Access to the property is via a frontage road.

Prior to the fall of 1975, the frontage road was a two-way road. As part of its plan to make the New Seward Highway a limited-access facility, the state made the frontage road a one-way road. B&G Meats' business was severely affected by the change.

B&G Meats filed a lawsuit in superior court on October 3, 1975. The suit alleged that the changing of the frontage road forced traffic heading south on the New Seward Highway to continue to the Dimond Boulevard exit and then double back along the frontage road to reach B&G Meats' business. The increase in travel distance was 2.3 miles. Because of this less direct route, many retail customers stopped shopping at the store. B&G Meats alleged that this was a taking or damaging of its leasehold interest under Article I, section 18 of the Alaska Constitution.[1] On January 4, 1978, the superior court partially granted the state's motion for summary judgment.[2] This appeal followed.

1. Art. I, § 18 provides:
   *Eminent Domain.* Private property shall not be taken or damaged for public use without just compensation.

2. B&G Meats also alleged that the slight change in grade which occurred when the frontage road was paved resulted in a drainage of water from the road into the parking lot. B&G Meats claimed that when the water froze in the winter cars had difficulty entering and

leaving the property. The record reveals little to show that the change in grade contributed to the damages claimed by B&G Meats. The superior court, while not specifically addressing the change in grade allegations, apparently found them insufficient to state a claim and granted summary judgment regarding this count of the complaint as well. After examining the record regarding the change-in-grade allegations, we find no error on this point. A

In determining whether B&G Meats has established a proper claim for recovery it is necessary to distinguish between damage to access, which, if unreasonably curtailed, can result in a taking, and regulation of traffic, which is an exercise of the state's police power and is not compensable. Courts have universally recognized that one of the incidents of ownership of property abutting a public highway is the right to reasonable access to that highway.[3] That right may not be taken or damaged without just compensation. On the other hand, it is also well established that a state may regulate the highways within its boundaries pursuant to its inherent police power. The difference between a noncompensable exercise of the police power and a compensable taking is often one merely of degree.

In a concurring opinion in *Ray v. State Highway Commission*, 196 Kan. 13, 410 P.2d 278 (1966), Justice Fatzer summarized what we consider to be the principles which control when a claim of taking caused by loss of access is raised:

> No hard and fast rule can be stated, but courts must weigh the relative interests of the public and the individual and strike a just balance so that government will not be unduly restricted in its function for the public safety, while at the same time, give due effect to the policy of eminent domain to insure the individual against an *unreasonable* loss occasioned by the exercise of the police power. The question depends upon the particular facts of the case. Obviously, if there is a total blocking of access, the restriction would be unreasonable and the abutter entitled to compensation. Where, however, the restriction does not *substantially interfere* with the abutter's ingress and egress or where "frontage" or "outer roadways" reasonably provide access the abutter is not entitled to compensation. While an abutter has the right of access to the public highway system, it does not follow that he has a direct-access right to the main traveled portion thereof; circuity of travel, so long as it is not unreasonable, is non-compensable. Likewise, loss of business occasioned by the diversion of traffic is non-compensable.

*Id.* 410 P.2d at 288–89 (citations omitted) (emphasis in original). The key question is thus whether the access remaining after the restriction is reasonable or unreasonable under the circumstances of the case.

A distinction must be made between loss of access and loss of traffic flow. The latter is not a part of the owner's interest in his property. Restrictions which merely result in a diversion of traffic away from the

---

third count of the complaint, alleging damages caused by construction work during the actual conversion of the frontage road, was stayed pending outcome of this appeal.

3. *Wernberg v. State*, 516 P.2d 1191, 1201 (Alaska 1973); *Rose v. State*, 19 Cal.2d 713, 123 P.2d 505, 514 (1942); *Ray v. State Hwy. Comm'n*, 196 Kan. 13, 410 P.2d 278, 280 (1966); *see generally*, W. Stoebuck, Nontrespassory Takings in Eminent Domain 22 (1977); A. P. Nichols, The Law of Eminent Domain § 14.2431 (Rev. 3d Ed. 1976); Annot., 73 A.L.R.2d 652 (1960). The state argues that B&G Meats' property does not abut the frontage road because it is separated from the road by an unimproved strip dedicated for use as a public street. We agree with B&G Meats that, under the circumstances of this case, it abuts the frontage road. For all practical purposes, the sole access to the property is the frontage road. The dedicated street is undeveloped and lies parallel to the frontage road. Construction of an adequate road on the dedicated easement is apparently unfeasible. To argue that this "street" provides an alternative access route, or that it prevents B&G Meats' property from abutting the frontage road would be to ignore practical considerations. B&G Meats cites to authority indicating that the property need not be physically touching the road easement to be "abutting" property for condemnation purposes. *See State v. Kemper*, 542 S.W.2d 798 (Mo.App.1976); W. Stoebuck, Nontrespassory Takings in Eminent Domain (1977); Annot., 93 A.L.R. 639, 646 (1934). Stoebuck states:

> Only land 'abutting' a public way has been accorded an easement of access. Obviously, this normally refers to land physically contiguous to a street, road or way. The term is somewhat broader and also includes land not contiguous that has access to the public way over an easement.

*Id.*

property are thus not compensable.[4] As one commentator aptly states:

> [M]aking a street one-way is apt to divert traffic from a businessman abutter. Harm from diversion of traffic may be difficult to separate from loss of access, but it must be, for, as several decisions properly note, it is not compensable.

W. Stoebuck, *Nontrespassory Takings in Eminent Domain* 61 (1977) (footnote omitted).

■ The claimed deprivation of access in this case arises essentially because the state changed the frontage road from a two-way street to a one-way street.[5] Although we have recognized that such a change may, in extreme cases, result in a compensable taking of access rights,[6] the general rule is clear that such a change is not by itself a taking.[7]

> [I]t seems clear that nonphysical regulatory measures, stop signs, one-way streets, no left-turn regulations, and the like will hardly ever amount to takings of access. In the nature of things this must be so, for these regulations impede not at all the abutter in reaching the street and normally will not seriously interfere with his access to the street system.

W. Stoebuck, *Nontrespassory Takings in Eminent Domain* 57–58 (1977) (footnote omitted).

■ The result of the change in this case is that some traffic must now travel an additional 2.3 miles to reach the property.

Under the circumstances of this case, the superior court concluded, and we agree, that the additional distance was not so unreasonable as to constitute a taking. To the extent that B&G Meats claims a taking because travelers on the New Seward Highway are unwilling to make the switchback now required by the one-way road arrangement, we conclude that this constitutes a diversion of traffic flow which is not compensable.

The case of *Wernberg v. State*, 516 P.2d 1191 (Alaska 1973), relied on by B&G Meats, is distinguishable. There this court held that the changing of a two-way road to a one-way road could be a compensable taking under the circumstances of the case. The claimed restriction was direct and acute. The plaintiff needed to drive large trucks onto his property. The changing of the road to one-way created such a sharp angle of abutment between the plaintiff's driveway and the road that his trucks were physically unable to turn from the road to the driveway. No comparable direct restrictions on access are present in this case.

AFFIRMED.

---

Its access to the highway has always been via the frontage road. It still has direct access to the frontage road, although traffic on the road can now travel only one way. Many of the cases relied on by B&G Meats involve situations in which the plaintiff had previously enjoyed direct access to the road in question, but lost this access when the road was upgraded to a limited access highway. *See, e. g., Teachers Ins. & Ann. Ass'n. v. City of Wichita*, 221 Kan. 325, 559 P.2d 347 (1977).

**6.** *Wernberg v. State*, 516 P.2d 1191, 1201 (Alaska 1973).

**7.** *Benson Hotel Corp. v. City of Minneapolis*, 290 Minn. 14, 187 N.W.2d 610, 615 (1971); W. Stoebuck, Nontrespassory Takings in Eminent Domain 57–58 (1977).

**4.** *See State ex rel. Herman v. Schaffer*, 105 Ariz. 478, 467 P.2d 66, 71, 42 A.L.R.3d 1, 8 (1970); *People v. Ayon*, 54 Cal.2d 217, 5 Cal. Rptr. 151, 352 P.2d 519, 523 (1960); *Brock v. State Hwy. Comm'n*, 195 Kan. 361, 404 P.2d 934, 943 (1965); *Benson Hotel Corp. v. City of Minneapolis*, 290 Minn. 14, 187 N.W.2d 610, 615 (1971); *State v. Peterson*, 134 Mont. 52, 328 P.2d 617, 626 (1958); *W.E.W. Truck Lines, Inc. v. Dept. of Roads*, 178 Neb. 218, 132 N.W.2d 782, 785–86 (1965); *Comm'r of Transp. v. Charles Inv. Corp.*, 143 N.J.Super. 541, 363 A.2d 944, 946 (Law Div. 1976); *See generally*, W. Stoebuck, Nontrespassory Takings in Eminent Domain 61 (1977); 4A P. Nichols, The Law of Eminent Domain § 14–133[4] (Rev. 3d Ed. 1976); Annot., 42 A.L.R.3d 13 (1972).

**5.** We note that B&G Meats has never had direct access to the New Seward Highway itself.