STATE of Alaska, Appellant,

v.

18,018 SQUARE FEET, MORE OR LESS; 1,849 square feet, more or less; C. Vernon Carlson, Jr., Defendant by Substitution, Appellees.

No. 4637.

Supreme Court of Alaska.

Nov. 28, 1980.

As Amended on Denial of Rehearing Jan. 12, 1981.

Larry D. Wood, Asst. Atty. Gen., Fairbanks, Avrum M. Gross, Atty. Gen., Juneau, for appellant.

Peter J. Aschenbrenner, Aschenbrenner & Savell, Fairbanks, for appellees.

Before RABINOWITZ, C. J., CONNOR, BURKE, and MATTHEWS, JJ., and CRASKE, Superior Court Judge.

## OPINION AS AMENDED ON REHEARING

MATTHEWS, Justice.

On January 6, 1975, the State of Alaska began condemnation of approximately 18,018 square feet of land needed for construction of the College Road Extension, a "feeder" to the Steese Expressway in Fairbanks. The land was a part of a larger parcel owned by Arthur and Adriana Peterson. The State and the Petersons agreed on a figure of $43,210.00 as just compensation [1] and, pursuant to this agreement, final judgment in the eminent domain action was entered on May 27, 1976. The judgment incorporated a document, prepared by the State, known as "Schedule A–1," which is the topic of dispute in this appeal. Schedule A–1 provides in pertinent part:

To enable the PLAINTIFF to construct and maintain a public highway, known as Alaska Project No. F–062–4(25), as a controlled access facility, in accordance with Sec. 19.20.010 through Sec. 19.20.050, Alaska Statutes, the PLAINTIFF hereby condemns and takes from the DEFENDANTS any and all rights or easements appurtenant to the DEFENDANTS remaining property by reason of its abutting said highway, including without limiting the foregoing, all rights of ingress to or egress from the DEFENDANTS remaining property contiguous to the lands hereby conveyed to or from said highway. *EXCEPTING and reserving to the DEFENDANTS, successors or as-*

*signs, the Right of Access to College Road Extension.*[2] [Emphasis added].

On July 1, 1977, the Petersons sold the remainder of their parcel to C. Vernon Carlson for $160,000.00. Carlson relied on representations based on Schedule A–1, made by the Petersons, a realtor, and a title company, that the property included the right of access to the College Road Extension. Carlson testified he would not have purchased the property without such access. Carlson and the State later stipulated that the value of the property without access to the extension was $128,000.00.

Carlson subsequently applied for a permit to construct a driveway to the extension. The application was formally rejected on July 25, 1977, as inconsistent with the designation of the extension as a "controlled access facility" in Schedule A–1 and elsewhere.

Carlson moved for substitution of himself as the defendant in the original condemnation action and for an order requiring the State to show cause why it should not be held in contempt for failing to grant access to the College Road Extension as required by Schedule A–1, incorporated into the judgment of the court. The motion came on for hearing before the court on October 24, 1977. The State did not appear. The court granted the motion for substitution and set a further hearing on the motion for order to show cause.

The hearing on the motion for order to show cause was held on December 16, 1977. At the hearing the court announced as a preliminary ruling its conclusion that neither a finding of contempt nor an order requiring the State to grant direct access to College Road were appropriate remedies, and that compensation for failure to give access would be the proper remedy if Carlson was entitled to relief. Counsel for the State indicated to the court that the State

---

1. Art. I, § 18 of the Alaska Const. provides: *Eminent Domain.* Private property shall not be taken or damaged for public use without just compensation.

2. The same schedule, with the same emphasized language, was attached to the Complaint, and to the Declaration of Taking filed by the State on January 6, 1975, which vested title in the State pursuant to AS 19.05.090.

was not prepared to go forward with proof at that time, and stated further, "I think the proper form for this should be an action in inverse condemnation." The court acknowledged that the case was in an unusual procedural posture, but noted that "the matter does need to be resolved. It should be set on for a hearing where everybody gives testimony to interpret just what that provision [in Schedule A–1] means." Without further objection from the State, the court set an evidentiary hearing for the following week.

The hearing was held as scheduled on December 23, 1977. At the outset, the court defined the issue for determination as whether Carlson was entitled to direct access to the College Road Extension. Neither party objected to this formulation.

At the hearing Carlson testified that he relied on representations contained in the title company report, and those made by a realtor and the Petersons, all of which were based on Schedule A–1, that he would have the right of access to the College Road Extension. The State presented testimony by the attorney who had acted for the State in the case until after the final judgment of May 27, 1976, was entered. His testimony demonstrated primarily that he did not know the purpose of the excepted right of access clause in the Schedule: "I don't know what that last sentence means starting with the EXCEPTING AND RESERVING ... but it looks just like a red herring. I don't know where it fits in here."

Following oral and written argument the court rendered its decision on February 8, 1978, concluding:

Although the language granting access was erroneously included in the declaration of taking, Carlson, who purchased the property for his insurance business acted reasonably in believing that he would have direct access and is entitled to

compensation because he did not receive direct access.

Carlson is entitled to the difference between the amount he paid for the property and the market value of the property on June 30, 1977, without direct access to the College Road Extension.

At the request of the State the court later entered formal findings of fact and conclusions of law. After the State's motion to reconsider both the order and the findings and conclusions was denied, the parties further stipulated to the figure of $32,000.00 as the difference between the fair market value of the property with and without access to College Road. The parties further stipulated to entry of judgment, reserving the right to appeal the liability of the State. Judgment in favor of Carlson was entered, from which the State now appeals.

The State first takes issue with the procedures employed in the superior court, contending that Carlson should not have been allowed to be substituted as a defendant pursuant to Alaska Rule of Civil Procedure 25(c)[3] and that the court should not have proceeded to determine his claim on the merits without requiring him to file formal pleadings and allowing time for discovery.

Whether or not a party should be substituted for another rests in the sound discretion of the trial court. 3B J. Moore, Federal Practice § 25.08 at 25–85 (1980). Rule 25 properly applies to post-judgment proceedings to enforce a judgment. *Panther Pumps & Equipment Co. v. Hydrocraft*, 566 F.2d 8 (7th Cir. 1977); 3B J. Moore, Federal Practice § 25.03[1] at 25–27, 28 (1980).[4] We find no abuse of discretion in allowing the substitution.

We also find no merit in the State's contentions regarding the formality of the pleadings and its opportunity to conduct discovery. The State did not move for an

---

3. Alaska R.Civ.P. 25(c) provides:

(c) *Transfer of Interest.* In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substi-

tuted in the action or joined with the original party. Service of the motion shall be made a provided in subdivision (a) of this rule.

4. Fed.R.Civ.P. 25(c) is identical to Alaska R.Civ.P. 25(c).

order requiring Carlson to file a more definite statement of what he was seeking. Moreover, the record makes it clear that all parties understood that the issue for determination was whether Carlson had a legal right to access to the College Road Extension which the State had in effect taken by its refusal to recognize such access. The State requested no discovery and therefore is not in a position to claim on appeal that it was denied the opportunity to conduct discovery.

 On the merits, we believe that the determination of the superior court was correct. The court's finding that Carlson reasonably relied on the wording of Schedule A–1 that he would have access to the College Road Extension is well supported in the record. Schedule A–1 is, like a deed, a title vesting document. It clearly reserved to the Petersons and their assigns the right of access to the College Road Extension. Carlson, as a bona fide purchaser for value,[5] acquired that right even if it was originally included in Schedule A–1 by mistake.[6] Carlson was therefore entitled to compensation from the State when the State took the access right by refusing to recognize and accommodate it.

 The taking of access only became apparent to Carlson at the time the State turned down his request for access on July 25, 1977, and his cause of action, in the nature of inverse condemnation, accrued at that point. *See Wickwire v. City & Borough of Juneau*, 557 P.2d 783, 784–85 (Alaska 1976); *State Department of Highways v. Crosby*, 410 P.2d 724, 728–29 (Alaska 1966). Since the parties stipulated that the differ-

ence between Carlson's purchase price and the market value of the property without access at approximately that time[7] was $32,000.00, the court did not err in entering judgment for that amount as just compensation to Carlson for appropriation of his rights.

AFFIRMED.

---

5. "To become a *bona fide* purchaser, one must have acquired title without notice, actual or constructive, of another's rights and also must have paid value for the same." *Sieger v. Standard Oil Co.*, 155 Cal.App.2d 649, 318 P.2d 479, 484 (1957). The trial court found that Carlson reasonably believed that he would have access at the time of his purchase; this finding necessarily implies that any notice Carlson may have had of the State's claim prior to his purchase would have been insufficient to charge a reasonable person with notice that access was not being conveyed. This finding is one of fact and is not clearly erroneous; therefore it must be sustained. Alaska R.Civ.P. 52.

6. S. Williston, The Law of Contracts § 1537, at 41–42, note 16 (Jaeger 3d ed. 1970).

7. The record shows that the State formally denied Carlson's request for access by letter dated July 25, 1977. The date used for the parties' stipulation as to the difference in fair market value with and without access was June 30, 1977. We assume, in the absence of any suggestion in the record or the parties' briefs to the contrary, that the 25 day discrepancy in the proper valuation dates does not prejudice the State.