**STATE of Alaska, Appellant,**

v.

**William G. LEWIS; .515 Acres, more or less; and .280 Acres, more or less, Appellee.**

No. S–2544.

Supreme Court of Alaska.

Jan. 12, 1990.

Rehearing Denied Feb. 16, 1990.

Linda L. Walton, Asst. Atty. Gen., Fairbanks, Grace Berg Schaible, Atty. Gen., Juneau, for appellant.

Cameron Kirk, Law Offices of John Rosie, Fairbanks, for appellee William Lewis.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

This is an appeal from consolidated eminent domain and inverse condemnation cases. The question presented is whether the state is entitled to a new trial on the amount of just compensation required for the taking of an abutting landowner's right of access to the Richardson Highway. We hold that the superior court abused its discretion in denying the state's motion for a new trial, because the jury verdict is internally inconsistent.

### I.  FACTS AND PROCEEDINGS

In 1969, the state condemned a strip of land bisecting an eighty-acre parcel owned by William and Geraldine Lewis in order to construct the New Richardson Highway. The Richardson Highway is a controlled access highway,[1] and the declaration of taking expressly took from the Lewises all rights of direct access. The Lewises and the state settled the condemnation suit for $7,786.50. In order to permit the Lewises

---

1. A controlled-access facility is "a highway especially designed for through traffic, and over, from, or to which owners or occupants of abutting land or other persons have either no right or easement or only a controlled right or easement of access, light, air, or view." AS 19.45.001(3).

to drive farm equipment between the newly-separated parcels, the state also gave them "a temporary right of reasonable access directly to [the] highway until such time as a frontage service road is constructed on the right-of-way along the northerly side of said highway."[2] The right of direct access would cease "[a]t the time said frontage roads are constructed," when the Lewises would be "limited to the right of reasonable access to said frontage service roads." The settlement document does not specify who would build the road, or when it would be built.

William Lewis still owns a portion of the original eighty acres abutting the northern side of the highway, and uses the direct access driveway established in 1969. In 1985, the state began construction of a new interchange at the intersection of Badger Road and the Richardson Highway which did not include plans for a frontage road along the northerly right-of-way. Instead, the state proposed to build a road along a section line easement running through Lewis' remaining property.

In August 1985, Lewis filed a claim for inverse condemnation, arguing that his property was damaged by the elimination of the promised frontage road. In January 1986, the state informed Lewis that its proposed plans had received federal funding approval. In July 1986, the state filed a declaration of taking condemning Lewis' direct access rights, as well as certain additional land needed to extend Hurst Road, the proposed section line frontage road. It is not clear from the record whether Lewis was actually deprived of the use of the driveway before the state filed its declaration of taking.

The eminent domain and inverse condemnation cases were consolidated. The superior court ruled that Lewis' driveway access rights had been taken in January 1986, and that the additional property had been taken in July 1986. A master appointed by the court pursuant to AS 09.55.300(b) ruled that Lewis was entitled to recover $50,000 for the lost driveway and acreage. Lewis

appealed and demanded a jury trial. Pursuant to AS 09.55.320.

Prior to trial, the state asked the superior court to rule as a matter of law that Lewis was not entitled to compensation for the state's failure to build a frontage road in the Richardson Highway right-of-way. The court denied the motion and later ruled that the question whether the state had promised to build a frontage road system was for the jury.

Following a two-week trial, the jury returned a special verdict requiring the state to pay Lewis $548,275.68 just compensation. The court denied the state's alternative motions for entry of judgment notwithstanding the verdict or a new trial. The state appealed.

## II. THE SUPERIOR COURT ABUSED ITS DISCRETION IN DENYING THE STATE'S MOTION FOR A NEW TRIAL

The state argues that it is entitled to a new trial because the jury verdict is internally inconsistent and unsupported by the evidence. Lewis contends that the state waived this argument by failing to raise it before the jury was dismissed, and that the verdict was supported by evidence presented at trial.

"Private property shall not be taken or damaged for public use without just compensation." Alaska Const. art. I, § 18. Article I, section 18 is liberally construed in favor of the property owner. *Alsop v. State*, 586 P.2d 1236, 1239 (Alaska 1978).

■ When property is taken for a public use, the owner is entitled to recover the fair market value of the property condemned. *State v. Doyle*, 735 P.2d 733, 735 & n. 3 (Alaska 1987); *Dash v. State*, 491 P.2d 1069, 1073 & n. 11 (Alaska 1971). When the state condemns property which is part of a larger parcel, the owner may recover damages to the portion not condemned by reason of its severance from the land taken. *Babinec v. State*, 512 P.2d 563, 567 & n. 7 (Alaska 1973), *rev'd on*

---

**2.** The direct access consisted of two driveways, one on the north side and one on the south side of the Richardson Highway. Only the north side driveway is at issue here.

*other grounds,* 586 P.2d 966 (Alaska 1978); AS 09.55.310(a)(2). The measure of severance damages is the difference between the fair market value of the remaining property before and after the partial taking. *See Doyle,* 735 P.2d at 737. In calculating the amount of severance damages, the condemnor is entitled to an offset of damages to the extent that the proposed public improvements confer a special benefit on the remaining property.[3] AS 09.55.310(a)(3).

The jury instructions in this appeal were in accord with these general principles. However, the state contends that inconsistencies in the jury verdict compel the conclusion that the jury did not follow the instructions. We agree.

■ When a jury returns a verdict based on answers to special interrogatories which are inconsistent, with each other and with the general verdict, *"judgment shall not be entered,* but the court *shall* return the jury for further consideration of its answers and verdict or *shall* order a new trial." Alaska R.Civ.P. 49(c) (emphasis added); *cf. City of Homer v. Land's End Marine,* 459 P.2d 475, 478 n. 2, 480 (Alaska 1969) (applying former discretionary version of Rule 49). In this case, the jury returned a special verdict. It found that the fair market value of the entire property before the takings was $1,956,192.40.[4] After the takings of land and access, however, the jury found that the remaining property was worth $1,963,936.10. It valued the .795 acres actually taken at $47,-905.55, and found that the remaining property suffered severance damages of $500,-370.13. Importantly, the jury also found that *the remaining property received no special benefit* from the extension of the Hurst Road. Thus, the jury determined that total just compensation was $548,-275.68, the value of the .795 acres plus the severance damages to the remainder.

The answers to the special interrogatories are internally inconsistent and inconsistent with the general verdict. The jury's conclusion that the remaining property was worth more after the taking than the entire parcel was worth before the taking is irreconcilable with its conclusion that the remainder received no special benefit from the project.[5] Thus, we hold that the superior court erred in entering judgment on the verdict. The state is entitled to a new trial.

## III. MEASURE OF DAMAGES

The state argues that the superior court erred in concluding that the trier of fact should determine whether Lewis was entitled to compensation for the state's failure to build a frontage road along the Richardson Highway right-of-way. Lewis contends that the evidence presented a factual question whether or not the state had promised to build the frontage road.

■ A property owner has a right of reasonable access to and from a public highway abutting his land. *Triangle, Inc. v. State,* 632 P.2d 965, 967 (Alaska 1981); *B & G Meats v. State,* 601 P.2d 252, 254 (Alaska 1979). This right does not include an implied right of direct access. *Triangle, Inc.,* 632 P.2d at 967; *B & G Meats,* 601 P.2d at 254. However, in this case, Lewis had an express right of direct access to the Richardson Highway by virtue of the 1969 settlement. The state could eliminate this right only by building a frontage road or by paying just compensation. *See Grant v. State,* 560 P.2d 36, 39 (Alaska 1977) (when negotiating parties rely on construction plans which are not implemented, "any further economic interference constitutes a second taking for which the state

---

3. A special benefit will not reduce the amount the owner is entitled to recover for the property actually taken. *Dash,* 491 P.2d at 1072 n. 6; AS 09.55.310(a)(3). Moreover, the special benefit must accrue to the precise property interest affected. *State v. Hammer,* 550 P.2d 820, 828 (Alaska 1976).

4. The court instructed the jury to "value the property without the taking of .795 acres, without a taking of Lewis's reserved [access] rights

and without knowledge of the [1985 construction] project."

5. Lewis suggests that the verdict is consistent if the jury found that the remainder increased in value as a result of general benefits; however, the jury was specifically instructed not to consider any increase in value resulting from general benefits.

must pay just compensation"). Since the state did not build the contemplated frontage road, we believe that Lewis may recover just compensation.

The state contends that the superior court erred in concluding that Lewis' right of direct access was taken as of January 31, 1986, when the state informed Lewis that its proposed construction plans received federal funding approval. We agree. As a matter of law, the date of the taking is the earlier of (1) the date that Lewis was actually deprived of the use of the driveway, or (2) the date that the state filed its declaration of taking. *See State v. 18,018 Square Feet*, 621 P.2d 887, 890 & n. 7 (Alaska 1980) (cause of action for inverse condemnation accrued when the state formally rejected an application for a driveway construction permit).

■ When an owner settles or receives a condemnation award in reliance on a construction plan which is implemented and later altered, the owner is entitled to just compensation for any resultant economic damage to the property, provided that a portion of the property was taken for the original construction project, and the remaining property decreased in value as a result of the alteration. *Alsop*, 586 P.2d at 1240. The owner's reliance must be objectively reasonable, based on the documents prepared to resolve the original condemnation action. *See State v. 18,018 Square Feet*, 621 P.2d at 890; *Alsop*, 586 P.2d at 1240 n. 8; *but see Alsop*, 586 P.2d at 1240 n. 9. Thus, Lewis is entitled to compensation for the state's failure to build a frontage road only if he settled the 1969 condemnation case in reasonable reliance on the fact that the frontage road would be built.[6]

We do not believe that the 1969 settlement documents created a reasonable ex-

pectation that the state would ever construct a frontage road along the Richardson Highway right-of-way. To the contrary, Lewis merely acquired the right to use a direct access driveway until such time, if ever, that a frontage road might be built. When the state deprived Lewis of the use of the driveway without building a frontage road, Lewis became entitled to just compensation for that which he lost: the use of a fourteen-foot driveway.

In summary, Lewis is entitled to recover the value of the .795 acres actually taken[7] and the diminution in value of the remaining property, if any, resulting from the loss of the driveway and the .795 acres, offset by special benefits conferred by the public construction project.

The decision of the superior court is REVERSED and the case REMANDED for a new trial to establish the amount of just compensation for the taking of Lewis' right of direct access to the Richardson Highway.

---

6. Article I, section 18 requires compensation only when an owner is deprived of a property right; the taking or damage, to a mere expectancy interest is not compensable. *See B & G Meats*, 601 P.2d at 254 (loss of traffic flow is not a part of an owner's interest in his property); *Stroh v. Alaska State Hous. Auth.*, 459 P.2d 480, 482 (Alaska 1968) (commercial tenant is not entitled to compensation for her reasonable expectation of renewal of a lease); *cf. State v.*

*Hammer*, 550 P.2d at 826 (business is "property"; therefore, owner is entitled to just compensation for temporary lost profits).

7. Neither party appealed the jury's finding that the fair market value of the .795 acres was $47,905.55. Thus, on remand, Lewis is entitled to recover that amount.