8,960 SQUARE FEET, MORE OR LESS; Dimond D Properties, a Limited Partnership; Dimond D Developers, a Connecticut Limited Partnership, Appellants,

v.

STATE of Alaska, DEPARTMENT OF TRANSPORTATION AND PUBLIC FACILITIES, Appellee.

No. S–3245.

Supreme Court of Alaska.

Feb. 22, 1991.

Julia B. Bockmon, Leroy J. Barker, Robertson, Monagle & Eastaugh, Anchorage, for appellants.

Virginia A. Rusch, Asst. Atty. Gen., Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Chief Justice.

This case arises on appeal from the grant of a motion for summary judgment. The ruling below was based on the premise that in an eminent domain proceeding to determine just compensation, "loss of visibility is not compensable as a matter of law." We reverse and remand for further proceedings consistent with this opinion.

### I.

Dimond D Properties and Dimond D Developers (Dimond D) own a tract of land in Anchorage, the Dimond D Development Subdivision. The eastern half of the subdivision (Block 2) is bounded on the north by Dimond Boulevard, on the west by Dimond D Circle, and on the east by a right of way belonging to the Alaska Railroad. A diagram of the relevant area is provided below for clarity.

In 1985, the state began a project to improve Dimond Boulevard. This project involved widening the road from two lanes to six lanes and providing an overpass across Dimond Boulevard for the Alaska Railroad. In the process of widening the road, the state condemned a portion of Block 2. The part of the subdivision condemned by the state (Parcel 59) abuts Dimond Boulevard for roughly 235 feet and extends some 35 feet into Block 2. For the elevated railroad crossing, gradually rising earth berms were built to raise the tracks so they could cross a trestle over the road. The berms were built entirely on the Alaska Railroad right of way. The southern berm is immediately to the east of Block 2 and reduces its visibility to motorists on Dimond Boulevard travelling west. The visibility of Block 2 from the Dimond Center, a shopping mall on the other side of the railroad tracks, is also impaired. In addition, the grade of Dimond Boulevard itself was lowered to pass under the tracks. Before the project began, Dimond Boulevard was about 1 to 2 feet above the grade of Block 2. The project lowered Dimond Boulevard approximately 5.5 feet from this original level at the northwest corner of Block 2 and some 7 feet below this level at the northeast corner of Block 2. The parties dispute whether the lowering of Dimond Boulevard had any effect on the visibility of Block 2.

At a hearing to determine just compensation for the taking of Parcel 59, Dimond D presented evidence that Block 2 suffered severance damages of $461,817 due to the loss of visibility from Dimond Boulevard and the Dimond Center. The state moved for a summary judgment ruling that Dimond D is not entitled to compensation for any loss of visibility. The superior court granted the state's motion, ruling that "loss of visibility is not compensable as a

matter of law." We now consider Dimond D's appeal from that ruling.

## II.

■ We are called upon to determine whether, as a matter of law, loss of visibility is ever compensable in an eminent domain proceeding. This is an issue of first impression in Alaska. As we face a question of law, we are not bound to defer to the lower court's decision; rather our duty is to adopt the rule of law which is most persuasive in light of precedent, reason, and policy. *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979); *Osness v. Dimond Estates, Inc.*, 615 P.2d 605, 610 (Alaska 1980).

■ Article I, section 18 of the Alaska Constitution provides that "[p]rivate property shall not be taken or damaged for public use without just compensation." We have held that this section is to be liberally construed in favor of the property owner. *See, e.g., Homeward Bound, Inc. v. Anchorage School District*, 791 P.2d 610, 614 (Alaska 1990); *DeLisio v. Alaska Superior Court*, 740 P.2d 437, 439–40 (Alaska 1987). Thus, owners are entitled not only to the value of the land taken, but also to consequential damages to any property severed from the taken parcel. *Babinec v. State*, 512 P.2d 563, 567 (Alaska 1973); *State v. Hammer*, 550 P.2d 820 (Alaska 1976).

### A. *Is Loss of Visibility Due to the Earth Berms Compensable?*

■ As a general matter, a landowner cannot recover from a neighboring landowner simply because he dislikes the use to which the second landowner put his property. Thus, a landowner could not recover from his neighbor just because the other had erected a building on his own property which blocked the view from the first owner's land,[1] or the visibility of the first own-

---

1. *See La Plata Elec. Ass'n v. Cummings*, 728 P.2d 696, 701 (Colo.1986) ("[A] landowner whose property is reduced in value by the acquisition and use of adjoining land by a private party ordinarily cannot recoup this loss from the adjacent land user."); *Collinson v. John L. Scott, Inc.*, 55 Wash.App. 481, 778 P.2d 534, 537 (1989)

("The general rule appears to be that a building or structure cannot be complained of as a nuisance merely because it obstructs the view of neighboring property.") (citing cases); 2A J. Sackman & P. Rohan, *Nichols' The Law of Eminent Domain*, § 6.32 at 6–226 (rev. 3d ed.1989) (erecting a structure which cuts off the view of

er's land.[2] The only way to prevent a neighbor from constructing a building which would block one's view is to buy an easement of view. *Collinson*, 778 P.2d at 536–37. The logical implication of this position is that a property owner has no right to an unobstructed line of vision to his property from anywhere off of his property, absent an easement of some sort.

■ The record indicates, and Dimond D does not dispute, that the earth berms obstructing Block 2's visibility were built entirely on the railroad right of way. Although the tracks were raised as the result of a state project, this is irrelevant. The fact is that the railroad could have raised its tracks (or otherwise obstructed Block 2's visibility) for any legitimate reason,[3] and Dimond D would have no legal basis to complain.[4] Dimond D's mere ownership of Block 2 gives it no property interest in the railroad right of way, and therefore it has no legal basis for complaining about loss of visibility due to the earth berms.

a neighbor "frequently is inflicted by private owners without liability").

2. *See Mohr v. Midas Realty Corp.*, 431 N.W.2d 380 (Iowa 1988) (neighbor's building blocked approaching motorists' view of business).

3. Although this is not an occasion to decide the issue, we note that there is authority for the proposition that a property owner has no right to erect and maintain a structure which substantially blocks the passage of light and air to a neighbor's property for the sole purpose of causing injury to the neighbor. *See Sundower, Inc. v. King*, 95 Idaho 367, 509 P.2d 785, 787 (1973).

4. Dimond D does not argue, and we find no evidence, that Dimond D had any easement of view across the railroad right of way.

5. The parties dispute whether there was loss of visibility due to the taking of Parcel 59. However, we will assume there was such loss for the purposes of this analysis since summary judgment was granted on the basis that "loss of visibility is not compensable as a matter of law."

6. A problem arises where the state takes a parcel yet does not immediately cause any loss of visibility to the remaining parcel through changes on the taken parcel. The concern is that the state may create some sort of obstruction on the taken parcel and thus cause a loss of visibility at some time in the future, long after the eminent domain proceedings are over. To protect the owner of the remaining parcel from

## B. *Is Loss of Visibility Due to Changes on Parcel 59 Compensable?*[5]

■ Unlike the building of the earth berms, the widening and lowering of Dimond Boulevard was accomplished through the taking of part of Dimond D's property, Parcel 59. This distinction is significant. Ownership of land gives the owner the right and ability to limit any obstructions from being placed on that land. In particular, ownership of land abutting on a road gives the owner the right to control the visibility of all adjoining land further off the road. This obviously can be an important commercial asset. Thus when the state takes a parcel which abuts the road, it also takes the potentially valuable right to control the visibility of the remaining parcel. For this reason, we believe that the best rule in light of reason and policy is that loss of visibility to a remaining parcel is compensable where that loss is due to changes made *on the parcel taken by the state*.[6]

such an occurrence, we believe that where the state simply takes land but creates no obstruction, an easement of visibility across the taken parcel is reserved to the owner of the remaining parcel. If and when the state causes a loss of visibility to the remaining parcel through a change on the taken parcel, then this constitutes a separate taking, this time of the easement of visibility. When this happens, the owner can bring an inverse condemnation proceeding to recover for the loss of visibility. *Cf. State v. Lewis*, 785 P.2d 24, 28 (Alaska 1990) ("When an owner settles or receives a condemnation award in reliance on a construction plan which is implemented and later altered, the owner is entitled to just compensation for any resultant economic damage to the property, provided that a portion of the property was taken for the original construction project, and the remaining property decreased in value as a result of the alteration."); *see also Grant v. State*, 560 P.2d 36, 39 (Alaska 1977).

Even when the state creates no obstruction on a parcel which it takes, it may, if it wishes, acquire a fee simple in such land, unburdened by an easement of visibility. However, to do so, the state must compensate the owner for the loss of the right to control the visibility of the remaining parcel. Since this might prove to be economically burdensome where the state has no intention of blocking the visibility of the remaining parcel, we believe that reserving an easement of visibility to the owner of the remaining parcel is preferable to, for example,

Cases from other jurisdictions lend general support for this position. The California case of *People v. Ricciardi*, 23 Cal.2d 390, 144 P.2d 799 (1943), also involved the partial taking of commercial land for the purpose of separating the grade of a street and a railroad. The effect was to block completely the visibility of the landowner's remaining parcel from the traffic travelling through the underpass. The California Supreme Court recognized an easement of reasonable view of the remaining parcel from the highway. *Id.* 144 P.2d at 806.[7] Courts in other jurisdictions have reached similar conclusions. *See Murphy, Inc. v. Town of Westport*, 131 Conn. 292, 40 A.2d 177, 183 (1944); *Kelbro, Inc. v. Myrick*, 113 Vt. 64, 30 A.2d 527, 530 (1943); *North Carolina State Highway Comm'n v. English*, 20 N.C.App. 20, 200 S.E.2d 429, 432–33 (1973); *Bramson v. Berea*, 33 Ohio Misc. 186, 293 N.E.2d 577, 583 (C.P.1971); *see also* 39 Am.Jur.2d, *Highways, Streets, and Bridges* § 173 at 548–49 (1968).

In addition to those courts which recognize a right of visibility, many courts recognize a right of view *from* a remaining parcel. At least some of these courts rely on the same reasoning we use here, i.e., a landowner is entitled to compensation for the reduced value of the remaining parcel caused by an obstruction placed on the taken parcel. *See, e.g., La Plata Elec. Ass'n v. Cummings*, 728 P.2d 696 (Colo. 1986) (landowner who had portion of property condemned for purpose of constructing an electric power line was entitled to

compensation for reduction in the value of the remainder of property resulting from aesthetic damage and loss of view); *Pierpont Inn, Inc. v. State*, 70 Cal.2d 282, 74 Cal.Rptr. 521, 449 P.2d 737, 745–46 (1969) (trial court did not err in permitting jury to consider the loss of view and relatively unrestricted access to the beach resulting from state's taking of part of larger parcel for freeway); *Dennison v. State*, 22 N.Y.2d 409, 293 N.Y.S.2d 68, 69–71, 239 N.E.2d 708, 709–10 (1968); *Miller Levee Dist. No. 2 v. Wright*, 195 Ark. 295, 111 S.W.2d 469, 472 (1937). *See generally* Annotation, *Eminent Domain: Compensability of Loss of View From Owner's Property—State Cases*, 25 A.L.R.4th 671, §§ 3–4, at 675–82 (1983).

The cases cited by the state against compensation for loss of visibility under any circumstances fail to persuade us. Several courts have denied compensation on the ground that since landowners have no right to traffic flow,[8] they cannot have the right to be seen by traffic. *See State ex rel. Missouri Highway & Transportation Comm'n v. Dooley*, 738 S.W.2d 457, 469 (Mo.App.1987); *Troiano v. Colorado Department of Highways*, 170 Colo. 484, 463 P.2d 448, 455 (1969); *Acme Theatres, Inc. v. State*, 26 N.Y.2d 385, 310 N.Y.S.2d 496, 498, 258 N.E.2d 912, 914 (1970). These cases overlook the fact that as long as there *is* a road adjacent to the taken property, part of the value of that property consists of the right to control the visibility

---

requiring condemnation of visibility rights in all cases. The easement approach leaves the option of whether to acquire—and pay for—the visibility rights of a remaining parcel with those in the best position to make that decision.

7. The California intermediate courts have split on the issue of whether or not a landowner is entitled to loss of visibility where the loss was not caused by construction on any part of his land. *Compare People v. Wasserman*, 240 Cal. App.2d 716, 50 Cal.Rptr. 95, 105 (1966) (denying compensation where the improvement causing the loss of visibility was not located on the property of the defendant) *with United California Bank v. State*, 1 Cal.App.3d 1, 81 Cal.Rptr. 405, 411 (1969) (approving compensation for loss of exposure of commercial land due to

construction of underpass on land not owned by commercial landowner). Our decision today is closer to the *Wasserman* decision.

8. We have previously indicated that there is no right to traffic flow. *B & G Meats, Inc. v. State*, 601 P.2d 252, 254–55 (Alaska 1979). The reason why the state can restrict traffic flow (e.g., by diverting the road away from one's property) is that the state is not using the landowner's property to accomplish its purpose. As we stated in *B & G Meats*, traffic flow "is not a part of the owner's interest in his property." *Id.* at 254. This is in contrast to the right of reasonable highway access which "[c]ourts have universally recognized [as] one of the incidents of ownership of property abutting a public highway." *Id.*

of land further away from the road.[9] The state also cites *Probasco v. City of Reno*, 85 Nev. 563, 459 P.2d 772, 774 (1969) where the court held that an abutting property owner does not have an implied negative easement of light, air, and view across a public street. *Probasco*, however, involved no physical taking of the abutting owner's property. This, as discussed above, is crucial to any compensation for loss of visibility under our holding today. *Filler v. City of Minot*, 281 N.W.2d 237 (N.D.1979) squarely rejects a claim for loss of visibility, yet no substantive reasoning is provided for this position. Finally, the brief language in *State v. Lock*, 468 S.W.2d 560, 566 (Tex.App.1971) is apparently dicta.

On the question of law before us today, we believe that for the foregoing reasons, the best position is that loss of visibility is compensable in an eminent domain proceeding where the diminished visibility results from changes on the property taken from the landowner, but not where it occurs due to changes on the property of another. Thus we REVERSE the grant of summary judgment and REMAND for further proceedings consistent with this opinion.[10]

---

**9.** We also note that the facts of *Dooley* leave unclear whether the loss of visibility to the remaining parcel was caused by any change on the taken parcel. Further, in *Troiano,* it was "undisputed that there [had] been no taking of Mrs. Troiano's property." 463 P.2d at 449.

**10.** With regard to loss of visibility, the relevant issue on remand will be whether the state made any changes on Parcel 59 so as to cause a loss of visibility of Block 2 from Dimond Boulevard. We note that the briefs of the parties reveal that this issue is not settled.